**COLLECTIVE BARGAINING AGREEMENT**

**between the**

**BROWARD SHERIFF'S OFFICE**



**and the**

**INTERNATIONAL UNION OF POLICE ASSOCIATIONS
LOCAL 6020, AFL-CIO**



**LAW ENFORCEMENT
DEPUTIES/SERGEANTS BARGAINING UNIT**

**OCTOBER 1, 2018 - SEPTEMBER 30, 2021**

# TABLE OF CONTENTS

| **Article** | | **Page** |
|---|---|---|
| | Preamble | 4 |
| 1 | Recognition | 5 |
| 2 | Non-Discrimination | 6 |
| 3 | Management Rights | 7 |
| 4 | Work Rules and Regulations | 8 |
| 5 | No Strike or Work Stoppage | 9 |
| 6 | Staffing | 10 |
| 7 | Seniority | 11 |
| 8 | Bulletin Boards | 13 |
| 9 | IUPA Representatives/Union Business | 14 |
| 10 | Communications Policy | 16 |
| 11 | Union Deductions | 17 |
| 12 | Basic Workweek and Overtime | 18 |
| 13 | Layoff/Recall | 21 |
| 14 | Leave of Absence without Pay | 22 |
| 15 | Equipment | 23 |
| 16 | Uniforms | 25 |
| 17 | Retirement | 26 |
| 18 | Americans with Disabilities Act | 29 |
| 19 | Wages | 30 |
| 20 | Longevity | 32 |
| 21 | Special Benefits | 33 |
| 22 | Advance Vacation Pay Provisions | 34 |
| 23 | Bereavement Leave | 35 |
| 24 | Light Duty Assignments | 36 |
| 25 | Court Appearances | 37 |
| 26 | Order to Return to Work | 38 |
| 27 | Out of Classification Pay | 39 |
| 28 | Supplemental Pay | 40 |
| 29 | Training and Tuition | 44 |
| 30 | Transfers | 45 |
| 31 | Personnel Records | 47 |
| 32 | Discharge and Discipline | 48 |
| 33 | Grievance Procedure | 49 |
| 34 | Drug and Alcohol Testing | 54 |
| 35 | Care and Maintenance of Canines | 55 |
| 36 | Insurance | 56 |
| 37 | Vacation & Holidays | 59 |
| 38 | Military | 63 |
| 39 | Sick Leave | 64 |
| 40 | Probation | 68 |
| 41 | Promotional Opportunities | 70 |
| 42 | Reproduction of Agreement | 73 |
| 43 | Savings Clause | 74 |
| 44 | Take Home Vehicles | 75 |
| 45 | Term of Agreement | 76 |

Appendix A    Salary Schedule                                                                    77
Appendix B    Article 44 - Take Home Vehicle – Grandfather Provision          78
Appendix C    MOU – Sworn/Certified Reallocations

## PREAMBLE

THIS AGREEMENT is entered into this October 1, 2018 by and between the SHERIFF OF BROWARD COUNTY, FLORIDA, located within the County of Broward, State of Florida (hereinafter referred to as "sheriff or "BSO"), and the INTERNATIONAL UNION OF POLICE ASSOCIATIONS, (AFL-CIO) (hereinafter referred to as "IUPA" or "Bargaining Unit"), as the sole and exclusive bargaining representative of the employees within the certified bargaining unit.

## WITNESSETH

WHEREAS, the IUPA has been determined to be the certified bargaining representative of the employees within the certified unit by the Public Employees Relations Commission based upon the Special Act of the Florida Legislature, House Bill 93-865, which inter alia, provides for rights of collective bargaining for specified deputy sheriffs employed by the Sheriff of Broward County;

WHEREAS, the Sheriff's obligation to bargain and to enter into this Agreement is based on the Florida Supreme Court's decision of January 30, 2003.

WHEREAS, the Sheriff and the IUPA have negotiated in good faith, with the IUPA acting as the exclusive agent for personnel included in the certified bargaining unit with respect to wages, hours, and terms and conditions of employment; and

WHEREAS, the parties, following extended and deliberate negotiations, and having had an opportunity to freely discuss any and all issues, have reached certain understandings which they desire to confirm in this Agreement.

IN CONSIDERATION of the following mutual covenants, it is hereby agreed as follows:

## ARTICLE 1

## RECOGNITION

The Sheriff recognizes the IUPA as the sole and exclusive bargaining agent for the bargaining unit of employees as certified by the Public Employees Relations Commission, Certification #1873, with respect to the working conditions, rates of pay and other conditions of employment for those employees of the Sheriff working within the certified unit, to-wit;

### INCLUDED:

All regular, full-time sworn law enforcement officers employed by the Broward County Sheriff's Office in the position of Deputy Sheriff with a rank of Sergeant and below, herein referred to as bargaining unit member(s).

### EXCLUDED:

All other employees of the Broward County Sheriff's Office including all other sworn law enforcement personnel and employees who are managerial, confidential, supervisory, temporary, reserves, part-time and probationary as provided for in Chapter 93-370, Laws of Florida.

## ARTICLE 2

### NON-DISCRIMINATION

2.1   No employee covered by this Agreement will be discriminated against by the Sheriff because of membership in the IUPA, or authorized activity as required in this Agreement on behalf of the IUPA.

2.2   The IUPA will not discriminate against employees covered by this Agreement on the basis of their refusal to become a IUPA member.

2.3   Both the Sheriff and the IUPA oppose discrimination on the basis of race, color, creed, sex, sexual orientation, national origin, age, religion, disability, pregnancy, marital status, or gender identity and expression or as otherwise required by law. However, the parties also recognize that the Sheriff has established an internal procedure to investigate and resolve alleged cases of discrimination which is in addition to existing and adequate procedures established by Broward County, the State of Florida and the Federal government.   Accordingly, it is agreed that allegations of employment discrimination cannot be processed through the contractual grievance/arbitration procedure.

## ARTICLE 3

### MANAGEMENT RIGHTS

The IUPA recognizes the rights of the Sheriff to operate, manage, and direct all affairs of his office, including the exclusive right, subject to the terms of this Agreement, which arises solely from the Special Act of the Florida Legislature, House Bill 93-865:

A.    To manage and direct all employees of the Sheriff's Office.

B.    To hire, rehire, reinstate, promote, transfer, schedule, assign and retain employees in position with the Sheriff's Office.

C.    To suspend, demote, discharge, layoff, or take other disciplinary action against employees for just cause.

D.    To maintain the efficiency of the operation of the Sheriff's Office.

E.    To determine the structure and organization of the Sheriff's Office, including the right to supervise, subcontract, expand, consolidate or merge any division thereof.

F.    To determine the number of all employees who shall be employed by the Sheriff, the job makeup, activities, assignments, and the number of hours and shifts to be worked per week, including starting and quitting times of all employees.

G.    To determine the number, types, and grades of positions or employees assigned to an organizational unit, department or project, and the right to alter, combine, reduce, expand, or cease any position.

H.    To determine internal security practices.

I.    The exercise of the above-defined rights by the Sheriff shall not preclude employees or the IUPA from raising grievances should decisions on the above matters have the practical consequences of violating the terms of this Agreement and/or affecting any other existing conditions of employment.

J.    The IUPA acknowledges that BSO may make amendments, revisions, additions, deletions and/or changes to the Sheriff's Policy and Procedures Manual. Any changes to the Manual shall be provided to the IUPA ten (10) days prior to issuance (when practicable) of such changes. If IUPA fails to object within the ten (10) calendar day timeframe, the change to policy will be implemented as written. Should IUPA object to the proposed change they must do so in writing to the Office of the General Counsel and impact bargaining must be completed within thirty (30) calendar days from the date of the objection.  The right to impact bargaining over any such change shall be waived unless the IUPA requests impact bargaining in writing within thirty (30) days of implementation. BSO's written notice of proposed changes to IUPA bargaining unit members' wages, hours, and terms and conditions of employment shall be provided in legislative format.

## ARTICLE 4

### WORK RULES AND REGULATIONS

4.1   It is recognized that the Sheriff currently has work rules, regulations, policies and procedures governing employment. The parties agree that the Sheriff has the sole and exclusive discretion to formulate, amend, revise and implement such rules, regulations, policies and procedures.

4.2   In the event that any rule, regulation, policy or procedure conflicts with this Agreement, the language in this Agreement shall control.

## ARTICLE 5

### NO STRIKE OR WORK STOPPAGE

The IUPA, its officers, agents, representatives, and its bargaining unit members and employees agree that they will not strike, as defined by the Public Employees Relations Act, and agree not to participate in a strike against the Sheriff by instigating or supporting a strike, nor shall the bargaining unit member participate in a work stoppage, slow-down, sick out, job actions or picketing in furtherance, of any of the above-prohibited activities. Notwithstanding the above, there shall be no picketing whatsoever in uniform by the bargaining unit members covered by this Agreement. The parties agree that any bargaining unit member who participates in or promotes any of the aforesaid activities may be discharged or otherwise disciplined by the Sheriff. The Sheriff agrees that picketing out of uniform on an employee's off hours is a constitutional right.

# ARTICLE 6

## <u>STAFFING</u>

The Sheriff has sole and exclusive discretion to determine appropriate staffing levels for the agency and to change staffing as he, in his sole discretion, deems appropriate.

# ARTICLE 7

## SENIORITY

7.1     Seniority, as used herein, is defined as the right accruing to bargaining unit members through continuous time in grade and classification, while employed by either BSO or a contract city, which entitles them to certain considerations and preferences as provided for in this Agreement with the exception of approved leaves of absences as provided in the Sheriff's Policy and Procedures Manual. However, seniority as it relates to reversion or layoff is outlined below or in the Layoff Article.

  a.   Deputies - If two (2) or more bargaining unit members have the same classification date, for the purpose of breaking the tie, seniority will be determined by the bargaining unit members "CCN" number.  The lowest number constitutes the senior bargaining unit member.

  b.   Sergeants – If two (2) or more Bargaining Unit Members are promoted to Sergeant on the same date, for purpose of breaking the tie seniority will be determined by the length of time the member was employed as a deputy and/or contract City Law Enforcement Officer. The more time employed as a deputy and/or contract City Law Enforcement Officer would have more seniority.  If both sergeants were promoted on the same date and were deputies and/or contract City Law Enforcement Officers for the same period of time, the lowest CCN number constitutes the senior member.

  c.   Reversions – If a bargaining unit member reverts, for any reason, to a lower classification, that member's classification seniority shall be determined by the date of his/her original permanent appointment to that lower classification.

7.2     Bargaining unit members shall be granted shift assignments and days off within the respective work units based upon seniority.  A bargaining unit member shall not be denied shift assignment or days off based on seniority for more than one (1) bid during the period covered by this Agreement. (i.e., the bid process takes place every six (6) months.  During the length of this agreement a bargaining unit member may be denied his/her bid selection a maximum of one (1) time. Denial of bids shall not be used as a disciplinary measure.  Bargaining unit members can appeal directly to the Sheriff or his designee, the issue of whether the denial of a bid was used as a disciplinary measure. The Sheriff or his designee's decision shall be final and not subject to further appeal.

  a.   Shift and day off selection will be held twice a year.  The first selection will be completed by the second pay period in January.  The second selection will be completed by the second pay period in July. The effective selection will go into effect the first of the month following the selection process.

7.3     Annual leave and holiday selection will be held once a year.  The selection process will take place the first week of February.  Selections will be for the time frame of 3/1 – 2/28. The Sheriff or his designee will determine the amount of available vacation slots.  Each bargaining unit member will have a reasonable time to select his/her vacation slot for the period of time as set forth in Article 37.1 (up to four (4) consecutive weeks) by seniority. Each bargaining unit member will be allowed to select his/her first pick and once all members have selected his/her first pick then a bargaining unit member will (by seniority) select his/her second pick. If a bargaining unit member voluntarily changes his/her shift, BSO has the right to disapprove the bargaining unit member's vacation pick.  If a bargaining unit member's shift is changed involuntary then the original vacation selection will be adhered to. Annual leave picks will be approved based on seniority and available positions within the bargaining unit member's district or assignment. Bargaining unit members on approved leave shall not be recalled to duty except by order of the Sheriff or his designee.

7.4     All other annual leave requests (individual requests) shall be approved/disapproved within five (5) calendar days of the request. Such requests must be made within sixty (60) days prior to the requested time off. Once the request is approved BSO shall not disapprove unless an emergency or critical situation exists, as determined by the Sheriff or his executive command staff.

7.5     Seniority in specialized units: Members assigned to a specialized unit will have shift and days off assigned by unit seniority, which shall be based upon continuous time within that unit unless operational needs of the unit dictate otherwise as determine by District Chief/Division Commander.

7.6     Bargaining unit members who are assigned to a 7K work schedule (80 hours) will be allowed to bid for their eight (8) hour work day based on seniority and amount of positions available in their assigned district or position.  Bidding for which day during the 7K work schedule the bargaining unit member works an eight (8) hour day will immediately take place following the district's approval of the current shift bid.

## ARTICLE 8

## BULLETIN BOARDS

8.1   The Sheriff agrees to permit reasonable use of all departmental bulletin boards located within the Sheriff's office by the IUPA to be used for official Bargaining Unit notices only.

8.2   The IUPA may provide written requests to the Sheriff to place its bulletin boards, at the sole expense of the IUPA, at each one of the District Offices and the Ron Cochran Public Safety Building.

8.3   The Sheriff, in his sole discretion, shall determine the size, and location and type of the bulletin boards which may be provided by the IUPA. The IUPA agrees that it may only use and/or post one bulletin board at a District and that those bulletin boards shall not be locked or enclosed.

## ARTICLE 9

## IUPA REPRESENTATIVES/UNION BUSINESS

9.1   The Sheriff recognizes the right of the IUPA to designate IUPA representatives as it deems appropriate, with the understanding that representatives will be appointed based on location and shift. The use of union time shall be limited to one (1) representative per shift for any one (1) district or specialty unit unless approved by Command. The IUPA shall provide BSO command with a list of its designated representatives (and any alternates) and shall update such list as changes are made.   Only those representatives (or alternates) so designated shall be authorized to use utilize the IUPA time pool bank pursuant to the provisions set forth below.

9.2   The Sheriff agrees to establish a IUPA time pool bank of up to one thousand (1,040) forty hours per calendar year to be used in accordance with the provisions as set forth in this Article.

9.3   The Union President shall report utilization of union time pool hours to the Director of Patrol Services Bureau or designee who is designated the responsibility of overseeing union time utilization and calculation. All other representatives will be allowed to utilize union time pool as long as there is no operational hardship as determined by Command. For these other representatives, requests for utilization of union time shall be authorized by a Department of Law Enforcement Captain in the member's chain of command. For each representative who is authorized to use time from the time pool bank, the representative shall fill out the appropriate form as provided by BSO. This form shall be processed as described above.

9.4   Effective the first full pay period after October 1, 2018 and every October 1, thereafter for the term of this agreement, IUPA members will donate two(2) hours of annual/holiday leave time accruals to the IUPA time pool bank.   All IUPA bargaining unit members may voluntarily donate up to an additional eight (8) hours of annual/holiday leave time accruals in hourly increments to the IUPA time pool bank.   Such time shall be utilized by IUPA representatives, if necessary, for union business as set forth in the following section. Donated bargaining unit members' time can be carried over to the following year.

9.5   Hours from the IUPA time pool bank shall be utilized by the full release position and designated IUPA representatives when they are required to represent bargaining unit members as part of grievance procedures, when they attend monthly IUPA Board of Directors meetings, negotiation sessions and meetings and other mutually agreed meetings, subject to available manpower and staffing needs. Except for negotiation sessions, the parties agree to limit the number of bargaining unit members attending such functions to no more than five (5) per shift. The parties agree that the number of bargaining unit members attending official negotiation

sessions while on duty will be restricted to no more than ten (10) representatives in an on-duty status and no more than one (1) representative from any one (1) District and/or specialty unit. Bargaining unit members attending such functions will submit a pool time form to the Sheriff or his designee a minimum of seventy-two (72) hours prior to the time the employee is requesting to use the time pool bank. It is understood that on rare occasions the seventy-two (72) hour time limit may not be met.  Failure to file a completed pool time usage form seventy-two (72) hours prior to the bargaining unit members request for use of pool time may result in the bargaining unit member not being paid for the time requested.

9.6    The IUPA time pool bank will be used on an hour for hour basis, regardless of the hourly rate of the bargaining unit member using time from the bank. In reporting a bargaining unit member's absence as a result of utilizing the time pool bank, the daily attendance record shall reflect: "Deputy John Doe on IUPA" (IUPA Time Pool bank)

9.7    All applicable rules, regulations, and orders of the BSO Sheriff's Policy Manual and relevant SOP's shall apply to any bargaining unit member on time pool release. Violations of the above-mentioned rules, regulations and orders shall subject the bargaining unit member on pool time to the regular disciplinary process currently provided for by the Broward Sheriff's Office.

9.8    A union selected executive board member of the union will be on full release for the purposes of conducting union business so long as the "e-board" member is a BSO employee. The hours for this full release BSO employee will be shared by BSO and the IUPA as 1040 hours from each party per fiscal year. The full release position will report directly to their applicable executive director. The IUPA selected executive board member will be released from their primary assignment to represent labor and maintain an open line of communication with management but may be recalled temporarily based on an operational necessity, such as during a hurricane watch or hurricane warning or for the duration of a declared state of emergency.

9.9    Only bargaining unit members who are in good standing will be able utilize union time pool or be on full release. Members on paid or unpaid suspensions, administrative leave, Worker's Compensation and FMLA may not be considered in good standing for the purposes of this agreement, as determined by the Sheriff.

## ARTICLE 10

## COMMUNICATIONS POLICY

10.1    The IUPA President or in his absence another BSO sworn bargaining unit member of the IUPA executive board, will be notified by BSO's CAD Alerts of critical incidents received by command staff. The Sheriff or his designee agrees to make a reasonable effort to ensure that IUPA is not denied the notice provided for in this section.

10.2    Other than those situations in which the response of the IUPA is specifically requested by the Sheriff, it shall be within the discretion of the IUPA as to whether an actual physical response is necessary.

10.3    The IUPA will provide BSO with the necessary information to facilitate compliance with this Article.

# ARTICLE 11

## UNION DEDUCTIONS

Union deductions shall be made in accordance with forms provided by the IUPA and executed and authorized by the bargaining unit member authorizing said deductions. There shall be no charge made by the Sheriff for these deductions. The exact amount of monies to be deducted for each bargaining unit member shall be provided by the IUPA to the Sheriff. Any changes in the amounts to be deducted shall be given to the Sheriff thirty (30) days in advance. These monies shall be transmitted to the IUPA on a biweekly basis after the deductions are taken from biweekly payroll.

The IUPA shall indemnify the Sheriff and hold the Sheriff harmless against any and all suits, claims, demands, and liabilities, which arise out of or by reason of any action taken by the Sheriff to comply or attempt to comply with the provisions of this Article.

This assignment, authorization and direction shall be revocable at any time upon thirty (30) days written notification by the bargaining unit member or non-bargaining unit associate member, to the Sheriff and the IUPA.

# ARTICLE 12

## BASIC WORKWEEK AND OVERTIME

12.1    The basic 40 hour workweek for bargaining unit members covered by this Agreement shall consist of forty (40) hours per week, starting at 12:01 a.m. Saturday and ending at 12:00 midnight Friday, unless otherwise specified or scheduled by the Sheriff or his designee, and as further defined herein.

The alternate 80 hour work schedule, within section 207(k) (hereinafter referred to as 7K) of the FLSA allows for flexibility of work schedules for Law Enforcement Officers.   The bargaining unit members working the alternate schedule will be referred to as 7K bargaining unit members.   For 7K bargaining unit members, the work period will be a fourteen (14) day period (beginning at 12:.01a.m. Saturday, and ending fourteen days later and coinciding with the normal two week pay period for regular bargaining unit members) of not more than eighty (80) hours. 7K bargaining unit member's workday may exceed eight (8) hours.

12.2    Bargaining unit members are not entitled to a fifteen (15) minute break. In lieu of the fifteen (15) minute break, bargaining unit members will not attend briefing fifteen (15) minutes prior to their normal shift. Briefing will be conducted during the course of normal work hours. Bargaining unit members are entitled to one thirty (30) minute meal break per eight (8) hour shift to be taken at the discretion of their immediate supervisor. Bargaining unit members on a ten (10) hour shift are entitled to one forty (40) minute meal break per shift.   Bargaining unit members on a twelve (12) hour shift are entitled to one forty-five (45) minute meal break per shift at the discretion of their immediate supervisor.

It is agreed by the parties that meal breaks will not represent compensable time. Nonetheless, bargaining unit members shall continue to receive pay for forty (40) hours of work per regularly scheduled workweek or eighty (80) hours of work per regularly scheduled work period for 7k members.

Such meal break time will commence for bargaining unit employees when they advise "10-40" prior to entering the location of the meal break.   Bargaining unit members assigned radios will remain in communication at all times during their meal break.   Bargaining unit members can be recalled from authorized meal breaks without incurring any added compensable time, unless a unit member accrues actual work time in excess of forty (40) hours for their regularly scheduled workweek or eighty (80) hours of work per regularly scheduled work period for 7k members.

Bargaining unit members will call out for their meal break. Bargaining unit members will not take a meal break during the first or last hour of their assigned shift unless authorized by a supervisor.

12.3 All authorized and approved work performed by bargaining unit members assigned to a basic 40 hour work week in excess of forty (40) hours in any one workweek shall be considered as overtime and shall be paid (unless the bargaining unit member at his option requests compensatory time off) at the overtime rate of one and one-half times the bargaining unit member's straight time rate of pay.

All authorized and approved work performed by 7k bargaining unit members in excess of eighty (80) hours in any one work period shall be considered as overtime and shall be paid (unless the bargaining unit member at their option requests compensatory time off at the overtime rate of one and one-half times of the bargaining unit members straight rate of pay.

However, hours worked pursuant to an assignment under Article 27.2 of this Agreement shall not be combined with the hours worked during the basic workweek or work period for 7k in the bargaining unit member's regular capacity for the purpose of determining overtime.

12.4 Compensatory time is time earned at one and one half times the overtime hours worked by a bargaining unit member. The choice of compensatory time off or overtime pay shall be at the bargaining unit member's option. Accrued unused compensatory time off may not exceed one hundred (100) hours, except when in the best interest of Broward Sheriff's Office and when approved by the Sheriff or his designee. Upon separation from the Broward Sheriff's Office, the bargaining unit member shall be paid for all approved accrued, unused compensatory time at the bargaining unit member's then existing rate. Once the one hundred (100) hours compensatory time maximum accrual has been reached, bargaining unit members required to work in excess of forty (40) hours in a designated workweek or eighty (80) hours in a work period for 7k members shall be paid overtime at the rate of one and one-half times their straight time rate of pay. Upon promotion to an exempt job classification or separation from BSO, the bargaining unit member will be paid for all accrued, unused compensatory time.

12.5 Hours that are computed as hours worked for the purposes of computing overtime are consistent with the Sheriff's Policy Manual (SPM) which shall include all hours in a paid status except sick leave and bereavement leave or FMLA leave, regardless of the accrual type being used for compensation while on FMLA leave.

12.6 Bargaining unit members may be required to work overtime as scheduled and, in some instances, unscheduled. To the extent reasonable and appropriate, under the circumstances as determined by the Sheriff or his designee, overtime will be distributed equitably among bargaining unit members in their particular job classification, in their organizational units, as far as the character of the work

permits.
The Sheriff's Office will maintain overtime records and will make such information available upon request.

12.7    Bargaining unit members who are on approved leave who are requested and agree to work during their regular shift will have their annual leave cancelled for that shift.

12.8    Overtime worked in an outside department will be overtime only not compensatory time unless approved by the home department.

# ARTICLE 13

## LAYOFF / RECALL

The Sheriff retains the exclusive right to determine the need for personnel reduction.

13.1   In the event of personnel reduction, bargaining unit members shall be laid off in the  inverse order of their seniority in their classification; provided, however, that where two (2) or more bargaining unit members have seniority standing within thirty (30) days of each other, the Sheriff shall determine the order of layoff based on education and performance. Upon reverting to a lower classification, a bargaining unit member's seniority shall be determined by the date of his/her original permanent appointment to that classification. All probationary bargaining unit members shall be laid off before any permanent bargaining unit member is laid off.

13.2   Bargaining unit members shall be recalled from layoff in accordance with their seniority in the classification from which they were laid off.  Recalled bargaining unit members will retain and carry over with them all seniority previously accrued in the classification from which they were laid off.  No new bargaining unit member shall be hired in any classification until all non-probationary bargaining unit members on layoff status in that classification have had an opportunity to return to work.  The Sheriff reserves the right in his sole discretion to require said recalled bargaining unit members to submit to an entry level test(s), (e.g. physical, , , toxicology testing), in order to determine that they are capable of performing the work available at the time of recall.  Further, all such recalled bargaining unit members must meet all of the established standards set by the Sheriff in effect at the time of the recall.  No laid off bargaining unit member shall retain recall rights beyond twelve (12) months from the date of layoff.

13.3   The Sheriff may deviate from the above-described procedure in order to maintain (or recall) personnel deemed necessary by the Sheriff and/or as necessary to comply with federal or state court orders, decrees, judgments, statutes, regulations, public safety purposes and/or requirements.

13.4   In the event of layoffs occurring at the rank of DLE Lieutenant, Lieutenants shall have the right to bump into the rank of Sergeant.  Upon reverting to the lower classification, a bargaining unit member's seniority shall be determined by the date of his/her original permanent appointment to that classification.

## ARTICLE 14

## <u>LEAVE OF ABSENCE WITHOUT PAY</u>

A bargaining unit member may be granted a leave of absence without pay with the prior approval of the Sheriff as provided for in the Family and Medical Leave Act (FMLA) and in accordance with the Sheriff's policies.

## ARTICLE 15

## EQUIPMENT

15.1   The Sheriff will provide uniforms consistent with the Sheriff's Policy and Procedures Manual.

15.2   In the event that personal property of a bargaining unit member, which is used with authorization of BSO, is damaged, destroyed or lost as a result of performance of duty, the Sheriff agrees to repair or replace the item based on the following conditions;

   a.   The bargaining unit member is required within twenty four (24) hours of the incident to submit a written memorandum including a police report, proof of purchase (which may include documentation other than a receipt), and documentation of the loss; and

   b.   The District Commander must review the bargaining unit member's memorandum and approve the request prior to disbursement; and

   c.   The total compensation to a bargaining unit member is limited to $400.00 per calendar year. (Not to include firearm).

   Firearms will be replaced at the actual cost of the same or similar weapon. Firearms seized as evidence in a deputy involved shooting shall be considered "lost" for the purposes of this article.

15.3   BSO will provide replacement of all leather and nylon accessories required for a bargaining unit member's use, including keepers for the service weapon belt. Leather accessories to be replaced will be presented to the District Commander for inspection and approval prior to receiving a replacement. All damaged leather/nylon goods shall be returned to the BSO prior to giving the bargaining unit member a replacement.

15.4   Bargaining unit members will be issued a rechargeable flashlight at time of hire. Damaged flashlights or replacement parts due to normal wear will be the responsibility of BSO.

15.5   Bargaining unit members, while on duty in uniform, will be required to wear one of the following types of footwear:

   1.   Oxford or ankle boot with corfam upper, black in color.

   2.   Oxford or ankle boot with leather upper, black in color.

3. Combat /jump boot, leather upper, totally black in color, to include boots that are partly made of fabric and partly made of leather. All boots will be the lace up type.

4. Plain black leather sneakers.  However, this footwear is not acceptable for special occasions requiring Class A uniforms, i.e., funerals, parades or other similar events.

15.6   All bargaining unit members will be provided, at five year increments, a longevity service bar to be worn on the uniform in conformance with the Sheriff's Policy and Procedures Manual. Said service bar will be supplied at no cost to the bargaining unit member.

15.7   The Parties will enter into a Memorandum of Understanding incorporating the settlement terms pursuant to the Petition for Enforcement of the PERC order regarding the restructuring of the "Loaner Gun Program".

## ARTICLE 16

## <u>UNIFORMS</u>

Two (2) IUPA members will serve as representatives of the uniform committee. In addition, ten (10) bargaining unit members will serve as testers, who will try out new uniforms before any final decision is made.  The IUPA may submit recommendations for the improvements of said uniforms and other equipment. The Sheriff's decision shall be final.

## ARTICLE 17

## RETIREMENT

17.1 **Florida Retirement System (FRS)** – Bargaining Unit members are required to meet the definition of "normal retirement date" as defined by FRS (FS 121.021(29)) as it applies to employees in both the Pension Plan and the Investment Plan. The definition and requirements will apply for retirement insurance discount eligibility determination.

**Contract City Pension Plan** – Bargaining unit members acquired through contractual agreement with cities and retiring from a contract city pension plan must meet the definition and eligibility requirements of the applicable contract city pension plan's regular retirement for retirement insurance discount eligibility determination.

17.2 Each bargaining unit member, who normally retires on length of service or medical disability shall receive his/her issued badge (suitable ID case), and identification card clearly marked "retired", including those bargaining unit members who are employed by the Sheriff's Office and are governed by a contract city pension plan.

Bargaining unit members leaving in good standing who have at least twenty-five (25) years of combined service to include BSO and contract city time, shall receive his/her issued badge (suitable ID case) and identification card clearly marked "retired".

17.3 Bargaining unit members hired prior to October 1, 2007 will be grandfathered to continue eligibility for the 2% retirement discount program. Bargaining unit members hired on or after October 1, 2007, will not be eligible for the 2% retirement discount program. Each bargaining unit member who qualifies for retirement, under normal retirement as defined by Florida Retirement System (FRS) shall receive a post retirement health insurance benefit equal to active duty members. Under said plan, the retiring member who is qualified to retire under FRS and in "good-standing" will receive two percent (2%) credit for each year of creditable service pro-rated by each full month of service with BSO up to a maximum of fifty percent (50%) of the total health insurance premium cost. The retiring bargaining unit member must meet all criteria and draw compensation from FRS within thirty-six (36) months of the last day of employment. Good standing as used in this section shall be defined as a bargaining unit member retiring without criminal charges pending that could result in loss of certification. If the bargaining unit member ultimately is convicted of a felony or the member's certificate is revoked by CJSTC, the bargaining unit member will forfeit the two percent (2%) for post-retirement healthcare upon a final order.

17.4 Bargaining unit members transitioned to BSO prior to October 1, 2007 will be grandfathered to continue eligibility for the 2% retirement discount program.

Bargaining unit members transitioned to BSO on or after October 1, 2007 will not be eligible for the 2% retirement discount program.

Those bargaining unit members who retire from a contract city pension plan and are employees of the Broward Sheriff's Office are eligible to remain in the Broward Sheriff's Office health care plan.  Under said plan, the retiring member who is qualified to retire in "good standing" as outlined herein will receive two percent (2%) for each year of creditable service pro-rated by each full month of service with BSO, not to include contract city time to a maximum of fifty percent (50%) of the total health insurance premium cost.  The retiring bargaining unit member must meet all criteria and draw retirement compensations within thirty-six (36) months of the last day of employment.

17.5   Retiring bargaining unit members leaving in "good standing", who meet the requirements outlined in Section 17.1 and who do not wish to continue to participate in the BSO Group health plan at time of retirement from BSO may elect to receive a monthly stipend equal to the premium amount paid by the Sheriff utilizing the lowest cost rates in place at the time of /retirement with the employee's percentage discount applied as outlined in section 17.3 and 17.4. The level of coverage will be determined by the lowest coverage level maintained for the 24 months directly preceding retirement.

Retiring bargaining unit members leaving in "good standing", who meet the requirements outlined in Section 17.1 and who do not participate in the BSO Group health plan at the time of retirement from BSO, may elect to receive a monthly stipend equal to the premium amount paid by the Sheriff utilizing the lowest single coverage cost rate in place at the time of retirement with the employee's percentage discount applied as outlined in section 17.3 and 17.4. The stipend shall cease the immediate month following the member reaching Medicare eligibility.

Employees who elected to continue coverage in the BSO Group Health Insurance may at a later date cancel the coverage and elect to receive a monthly stipend equal to the stipend available at the time of separation/retirement. Employees are only eligible to elect the monthly stipend upon cancellation of their active participation in the BSO Group Health Insurance Plan.

- The employee must send written notification to BSO 30 days prior to the date they wish to terminate the coverage
- Termination of coverage must be the end of the month
- Employees will have 30 days from the last day of coverage to rescind their cancellation and maintain health insurance through the Broward Sheriff's Office
- Once cancellation of health coverage takes effect, the retiree will begin receiving monthly stipend payments based on the amount equal to the stipend available at the time of separation/retirement.

Employees electing the monthly stipend may not re-enroll in the BSO Group Health Insurance at a future date.

Stipend shall cease the immediate month following the member reaching Medicare eligibility.  Bargaining unit members retiring who no longer wish to participate in the health plan will not be eligible to re-enter the BSO health plan at any time in the future.

17.6   Effective upon contract ratification, bargaining unit members hired or transitioned to BSO on or after October 1, 2007, is eligible to participate in a BSO established retirement health savings plan (RHSP).   A contribution in the amount of two percent (2%) of the bargaining unit members base bi-weekly salary, as reflected in the  salary schedule as of each January 1, will be contributed by BSO each bi-weekly payroll.  The contribution for employees entering bargaining unit at any time after January 1 will be calculated as two percent (2%) of the bargaining unit member's base bi-weekly salary, as reflected in the current salary schedule, as of the bargaining unit member's date of entering the bargaining unit.

17.7   Bargaining unit members hired or transitioned to BSO on or after October 1, 2007, shall become eligible to receive the RHSP benefit upon meeting the retirement requirements outlined in 17.1 and leaving in good standing.  Payments shall be made as outlined in the RHSP summary plan description.

# ARTICLE 18

## AMERICANS WITH DISABILITIES ACT

18.1  BSO may be required to take certain actions to comply with the Americans with Disabilities Act ("ADA"). These actions may be required to be maintained as confidential under the ADA, yet impact upon bargaining unit members covered by this Agreement. Accordingly, BSO is permitted to take such action(s) in compliance with the ADA requirements without disclosure to the IUPA or any affected bargaining unit member. In that event, no action taken by BSO, in compliance with ADA, is subject to the grievance procedure herein.

18.2  The IUPA may request bargaining unit members to execute written waivers of the confidentiality requirements of the ADA and provide a copy of those waivers to BSO. In any case involving a waiver, the provisions of this Article regarding access to the grievance procedure shall not apply.

18.3  The parties agree to be bound by any subsequent federal regulations or interpretive guidelines as to the application of the ADA which apply in the context of collective bargaining.

# ARTICLE 19

## WAGES

Salary schedules for bargaining unit members are hereby established upon funding by the Broward County Board of Commissioners. All salary changes take effect the first full pay period after the recited date in the following sections. Anniversary dates are defined within the Broward County Sheriff's Office Policy and Procedure manual. To the extent that any wages or other benefits in this agreement may be applied retroactively, such wages and benefits will apply only to those bargaining unit members actually employed by the Sheriff at the time of the ratification of this agreement.

## Salary Range Adjustments

19.1    Effective Fiscal Year 2018/2019 (October 1, 2018 thru September 30, 2019), the Sheriff will provide all bargaining unit members with a pay increase of three and one-half percent (3.5%) of their base salary, i.e., excluding incentive, longevity, supplemental or any additional pay.

19.2    Effective Fiscal Year 2019/2020 (October 1, 2019 thru September 30, 2020), a three percent (3%) or greater salary range adjustment for all IUPA 6020 bargaining unit members will preclude a reopener of this article. .Any additional increase to the salary range offered after the effective date above shall be determined by the Sheriff.

19.3    Effective Fiscal Year 2020/2021 (October 1, 2020 thru September 30, 2021), a three percent (3%) or greater salary range adjustment for all IUPA 6020 bargaining unit members will preclude a reopener of this article. Any additional increase to the salary range offered after the effective date above shall be determined by the Sheriff.

## Step Plan

19.4    In accordance with the Appendix B, bargaining unit members not at the maximum rate of the pay range shall advance one step in the pay plan on the member's anniversary date.

19.5    Effective pay period beginning April 13, 2019, an additional two percent (2%) longevity salary step (Step 10) will be added to the pay plan. Bargaining unit members on (Step 9) that have completed twenty (20) years of continuous service will be eligible to move to (Step 10) effective pay period beginning April 13, 2019, Any subsequent bargaining unit members who are on (Step 9) that complete twenty (20) years of continuous service will be eligible to move to (Step 10) on their anniversary date.

19.6   Effective the first full pay period after April 1, 2020, an additional two percent (2%) will be added to (Step 10).

# ARTICLE 20

## LONGEVITY

Bargaining unit members after having completed twelve (12) years of continuous service, shall receive an increase in their base pay of five percent (5%).  An additional increase of five percent (5%) shall be granted upon completing eighteen (18) years of continuous service.  An additional increase of two percent (2%) shall be granted upon completing twenty (20) years of continuous service. Longevity adjustments are contingent on the bargaining unit member remaining in their position without any pending performance concerns. Said adjustment(s) will be based on the bargaining unit member's ORIGINAL DATE OF HIRE regardless of the salary pay step the bargaining unit member is in at the time he/she attains the required number of years.

## ARTICLE 21

## SPECIAL BENEFITS

21.1   The Sheriff shall provide and pay full premiums in accordance with Florida State Statute 112.19 to include all bargaining unit members who are temporarily or permanently assigned to the helicopter or fixed wing section.

21.2   Effective January 1, 2019, the Sheriff shall provide a clothing allowance of four hundred ($ 400.00) dollars per year for bargaining unit members working full-time in the following assignments:  Homicide,  Broad County Drug Task Force (BCDTF), Gangs, Internet Crime Against Children (ICAC), Money Laundering Task Force (MLTF), Organized Crime (OC) Covert Electronic Surveillance, Office of Homeland Security, Counter Terrorism, Special Victims Unit, Internal Affairs, Real Time Crime Center (RTCC), Threat Management Unit (TMU)  and Burglary Apprehension Team (BAT).

BSO will provide District CI Detectives with Class C detective uniforms.

a. During the term of this agreement if any other assignments are created BSO and the IUPA agree to meet and confer to discuss whether such newly created assignment(s) should be included in article 21.2.

Eligibility for clothing allowance shall be determined as of January 1 for service performed in the above specified assignments for the preceding year, and will be paid by January 30 to active bargaining unit members on a pro-rata basis computed monthly for determination of eligibility and payment.

21.3   **Line of Duty Payroll Deduction** - In the event of the death of a bargaining unit member in the line of duty, the BSO will process a payroll deduction of twenty-five dollars  ($25.00) from dues paying members within the next full pay period.  The sum total of the deduction will be made payable to IUPA for presentation to the bargaining unit member's beneficiary on record with BSO.  BSO will provide IUPA with a detailed accounting of all dues paying members included in the deduction.

# ARTICLE 22

## ADVANCE VACATION PAY PROVISIONS

A bargaining unit member may request his/her accrued vacation or holiday leave pay in advance of his/her scheduled leave by submitting a request in writing (including approved leave slip) to the Finance Department, Payroll Division at least three (3) weeks prior to starting leave.  This shall be limited to bargaining unit members on leave in excess of ten (10) working days.

## ARTICLE 23

## BEREAVEMENT LEAVE

23.1   During the term of this Agreement, each bargaining unit member shall be granted three (3) days of bereavement leave at his/her regular rate of pay in the event of death of the bargaining unit member's mother, father, step-mother, step-father, step child, brother, sister, son, daughter, grandchild, spouse, County registered domestic partners, mother-in-law, father-in-law, mother or father of County registered domestic partner, and the bargaining unit member's natural grandparents.  In the event the funeral occurs outside the State of Florida, five (5) days on the same terms and conditions shall be granted upon proof that the funeral and/or burial occur outside the State of Florida. In the event bargaining unit members require additional time off they may request up to two (2) additional work days off through utilization of their accruals which will not be unreasonably denied. Only full-time bargaining unit members are eligible for bereavement leave. The Sheriff reserves the right to require documentation supporting bereavement leave upon the bargaining unit member's return to work.

## ARTICLE 24

## LIGHT DUTY ASSIGNMENTS

24.1 Bargaining unit members who are temporarily unable to perform the essential functions of their position due to an illness or injury may be temporarily re-assigned to a light duty assignment for which they can perform the essential job functions. A maximum of thirty (30) light duty positions will be available. Preferences for light duty positions will be given to bargaining unit members who sustain an on-duty injury. The Sheriff or his designee in his sole and exclusive discretion may increase the number of light duty positions. (If BSO contracts with additional agencies then, the number of light duty positions will be negotiated.) A bargaining unit member who refuses a light duty assignment authorized by his or her physician will be ineligible to use any accrued leave or disability benefit to which he/she would otherwise be entitled.

**On-Duty Injury or Illness** – All light duty assignments will be administered in accordance with Worker's Compensation F.S. 440.15 (6). If a bargaining unit member incurs an on-duty injury or illness, the bargaining unit member may be allowed, at the discretion of the Sheriff or designee, to return to work status upon the recommendation of the Worker's Compensation authorized physician. At the discretion of the Sheriff or designee, the light duty assignment may continue in excess of sixty (60) working days.

**Off- Duty Injury or Illness** – If a bargaining unit member incurs an off-duty injury or illness, the bargaining unit member may be allowed, at the discretion of the Sheriff or designee, to return to work in a light duty status upon the recommendation of his/her physician, for no more than sixty (60) working days in any continuous 24 month period, except in exceptional circumstances, as determined by the Sheriff or designee.

# ARTICLE 25

## COURT APPEARANCES

25.1 Any bargaining unit member who is required to appear as a witness in court as a direct result of employment with BSO shall be entitled to the following:

    a.    Regular pay if called to testify during regularly scheduled work hours.

    b.    One and one-half (1 ½) times the bargaining unit member's straight time rate of pay with a minimum of three (3) hours including travel time, if called to testify (other than by the Sheriff's Office), appear in court, or present a case to the State Attorney's Office outside the bargaining unit member's regular hours of work, excluding sick leave.

    c.    Any bargaining unit member subpoenaed to testify, appear in court, or present a case to the State Attorney's Office within 60 minutes before the start or at the end of his/her shift will be compensated at the rate of one and one-half (1 ½) times the bargaining unit member's straight time rate of pay for the actual time spent in court before or after his/her regular shift.  Any time spent in court will be paid as continuous to the shift as outlined above. For purposes of this section, the court minimum would not apply.

    d.    Any bargaining unit member who is required to appear more than once during a day will receive an additional three (3) hour minimum if the second subpoena requires the bargaining unit member's appearance three (3) or more hours from the beginning time of the first subpoena.  If it is less than three (3) hours from the beginning time of the first subpoena then it will be paid as continuous time. This provision is limited to two (2) minimum appearance fees daily.

25.2 A bargaining unit member subpoenaed to appear as a witness in a case not involving the Sheriff's Office and not directly related to the bargaining unit member's personal affairs, (such as performing a civic duty as a witness to a crime or an accident) will be allowed time off without pay for this purpose. Adequate prior notice must be provided by the bargaining unit member.

25.3 Time off to respond to a subpoena to appear as a witness in a case related to a bargaining unit member's personal affairs will be at the bargaining unit member's own expense (vacation or unpaid leave). Adequate prior notice must be provided by the bargaining unit member to his/her command.

25.4 Court testimony outside of the tri-county area that together with travel time exceeds twelve (12) hours shall require the bargaining unit member's receipt of lodging and meals at the per diem rate in accordance with applicable state laws.

# ARTICLE 26

## ORDER TO RETURN TO WORK

26.1    Bargaining unit members who have left the work place and who are ordered or otherwise directed to return to work after completing their scheduled shifts shall be paid at the rate of one and one half times the bargaining unit member's straight time rate of pay for hours worked, with a minimum of three (3) hours paid.

This section shall also apply when a bargaining unit member is required to provide a statement to an investigative unit at a time which begins more than 60 minutes before his/her scheduled shift or more than 60 minutes after his/her shift is completed.

26.2    An order to return to work does not include any hours where a bargaining unit member is required to work before or after a shift that runs continuous with the bargaining unit members shift or where the bargaining unit member is called back to work to rectify his/her own error or omission which cannot wait until the bargaining unit member's next shift. In such instances, the bargaining unit member shall be compensated for the hours worked at the appropriate rate.

26.3    Bargaining unit members called back to work who are on authorized leave shall be paid at the rate of one and one-half times the bargaining unit member's straight time rate of pay for hours worked with a minimum of three (3) hours paid. Such bargaining unit member shall not be charged leave for any such hours worked.

26.4    Bargaining unit members who work the ALPHA shift will be paid at their straight time rate of pay up to a maximum of one and one-half (1 ½) hours for time spent obtaining annual emissions testing and speedometer calibration for their BSO vehicles.  Appropriate documentation of time spent for service shall be provided by the bargaining unit member to his/her command.

26.5    Bargaining unit members who are ordered to return to work in accordance with this Article, whose order is subsequently cancelled shall be paid at the rate of one and one half times the bargaining unit member's straight time rate of pay for hours worked, with a minimum of three (3) hours paid.

# ARTICLE 27

## OUT OF CLASSIFICATION PAY

27.1    The Sheriff may, at his discretion, assign a bargaining unit member covered by this Agreement to serve as temporary replacement for an absent supervisor.   The bargaining unit member shall be paid five (5%) percent above their current rate of pay for all work performed in the temporary position. Designated Field Training Officers are exempt from this Article.

27.2    Out of State Inmate Transportation. Bargaining unit members will be compensated for all hours worked while engaged in the duties related to inmate transport.

Only BSO Deputies who meet the specific qualifications listed below are eligible to apply for this assignment.

a.    This work will be performed by bargaining unit members on a voluntary, occasional and sporadic basis and in a capacity different from their regular employment.

b.    Any bargaining unit member with sufficient accrued paid leave to cover the time required to complete the inmate transportation assignment is eligible for selection by the Director or designee.

c.    The inmate transportation assignment may not conflict with the bargaining unit member's regularly scheduled shift without prior written authorization from the Director or designee.

d.    Inmate transportation opportunities will be posted with a deadline for application.  All eligible bargaining unit members may apply.

e.    Selection of the bargaining unit member will be made on the basis of seniority from those eligible bargaining unit members who have submitted timely applications consistent with General Orders and/or the Sheriff's Policy and Procedures Manual.

f.    Selected bargaining unit members, in addition to the compensation received for use of accrued paid leave time, will receive travel expenses and a flat rate per diem stipend.

## ARTICLE 28

## **SUPPLEMENTAL PAY**

28.1 Bargaining unit members must complete the certification process as Field Training Deputies (FTD's) and must be designated as an active FTD by their respective command before they will receive a supplement in addition to their base salary according to the following supplement schedule:

Field Training Deputies (FTD's) designated as an active FTD by their respective command will receive a supplement in addition to their base salary of $200.00 per month.

A written component to the FTD duties will require additional time beyond their scheduled shift. FTD's will reasonably spend no more than one (1) extra hour per day for said duties.  FTD's who are actively training will receive one (1) hour of overtime or compensatory time at the bargaining unit member's discretion for each day that he/she is training a trainee.

a. FTD's who have completed a minimum of two (2) years in the FTD program who no longer wish to perform as a FTD may, if the bargaining unit member has left in good standing , request a transfer to a district of their choice.  This request shall be a one-time request wherein the bargaining unit member will receive first preference for vacancies in any road patrol assignment, so long as there is a budgeted vacancy in any road patrol assignment with the district in which the bargaining unit member wishes to transfer.  If no budgeted vacancies exist, no deputies assigned to road patrol shall be transferred into the district until an FTD's transfer request, pursuant to this paragraph, is fulfilled.  This paragraph does not apply to transfers to specialized units.

b. BSO recognizes the need for FTD's not to be utilized continuously in a training capacity and will make best efforts to provide appropriate breaks in a bargaining unit member's training functions.  However, BSO retains the right to assign FTD's to training functions to best serve the needs of BSO.

c. In the event that there are FTD's who wish to train on a part-time basis, they will receive only those benefits outlined in paragraph 28.1(a) above.  The parties agree that bargaining unit members who offer a trainee a "ride along" will not be considered a part-time trainer for the purposes of this Agreement and will not be required to fill out any other documents.

d. Bargaining unit members receiving supplemental pay as set forth in Article 28.1 for his/her work as an FTD will also be allowed to receive one (1) other supplement  set forth in the remainder of this Article.

28.2   Current bargaining unit members who reside in the tri-county area without assigned vehicles will receive a supplement to their base salary of four hundred fifty three dollars and forty-five cents ($453.45) per month.. Bargaining unit members with an assigned vehicle who choose not to take it home are not eligible for the vehicle supplement

   a.   BSO retains the right, in its sole discretion, to deny a take home vehicle and deny a vehicle supplement to bargaining unit members placed on restrictive administrative assignment, within the sole discretion of BSO.

   b.   Where the restrictive administrative assignment and investigation result in termination of employment and the bargaining unit member suffered the loss of vehicle without supplement, the affected bargaining unit member, who otherwise has the right to arbitration for the termination of employment under the terms of the Collective Bargaining Agreement, may request the vehicle supplement as a lost benefit (like back pay) to be paid to him/her in the event of reinstatement and will be paid the prevailing vehicle supplement pursuant to the Collective Bargaining Agreement only if such amount is specifically awarded by the arbitrator upon reinstatement.  BSO reserves the right to fully defend the termination at arbitration, including the right to challenge the award of any back pay and/or benefits in the event of reinstatement, including the vehicle supplement.

   c.   Where the restrictive administrative assignment and investigation result in discipline less than termination of employment and more than a five-day suspension, and the bargaining unit member suffered the loss of vehicle without supplement, BSO will reimburse the member for the loss of the vehicle supplement for the period of the restrictive administrative assignment less any period of suspension. However, BSO reserves the right to enumerate the loss of the vehicle supplement for any or all of the time period as part of the discipline accompanying the suspension. The affected bargaining unit member, who otherwise has the right to arbitration for the discipline at issue under the terms of the Collective Bargaining Agreement, may request the vehicle supplement as a lost benefit (like back pay to be paid to him in the event discipline is not sustained) and will be paid the prevailing vehicle supplement pursuant to the Collective Bargaining Agreement. BSO reserves the right to fully defend the discipline at arbitration, including the right to challenge the award of any benefit, including the vehicle supplement.

   d.   Where the restrictive administrative assignment and investigation result in a counseling or discipline of a  three day suspension or less, which can be challenged only before the AAB, and the bargaining unit member suffered the loss of vehicle without supplement, BSO will reimburse the member for the loss of the vehicle supplement for the period of the restrictive administrative assignment.

e. Where the restrictive administrative assignment results in disciplinary charges which are not sustained by BSO through its practice and procedure for investigating and reviewing charges and the bargaining unit member is returned to full duty without discipline, the member will be reimbursed for the vehicle supplement during the period of the restrictive administrative assignment, if the member was denied a vehicle and the supplement.

28.3 Bargaining unit members who are regularly assigned to operate aircraft will receive a supplement in addition to their base salary of two hundred twenty five dollars ($225.00) bi-weekly.

a. Newly hired deputies or current deputies transferred to the assignment to operate rotary-wing aircraft will receive a minimum of Step 7 in the salary range.  However, the bargaining unit member will still need to reach the requisite years of service to be eligible for any compensation based upon longevity.

b. Should the deputy assigned to operate a rotary-wing aircraft subsequently receive a different assignment he or she will suffer no loss in base salary, but will lose the supplemental pay herein.

28.4 Bargaining unit members who are regularly assigned to the bomb/arson unit in a position which requires the location and removal of explosive materials will receive a supplement in addition to their base salary of one hundred twenty five dollars ($125.00) bi-weekly.

28.5

a. Bargaining unit members regularly assigned to, C. I, Regional Narcotics, VIPER, K-9, Dive Team, Motors, Covert Electronic Surveillance, DUI Task Force, CPIS, District CST Team, District CI, Marine Patrol, Traffic Homicide Investigation (THI), Training and Harbor Patrol will receive a seventy-five ($75.00) dollar bi-weekly supplement in addition to their base salary.

b. Effective upon contract ratification bargaining unit members regularly assigned to the Burglary Apprehension Team (BAT) will receive a seventy-five ($75.00) dollar bi-weekly supplement in addition to their base salary.

c. Bargaining unit members regularly assigned to SWAT (including Hostage Negotiators) will receive a one hundred fifty ($150.00) dollar bi-weekly supplement in addition to their base salary.

d. Bargaining unit members regularly assigned to Crime Scene will receive a one hundred twenty-five ($125.00) dollar bi-weekly supplement in addition to their base salary.

e. Bargaining unit members regularly assigned as a full time Tactical Flight Officer (TFO) will receive a one hundred twenty-five ($125.00) dollar bi-

weekly supplement in addition to their base salary. Bargaining unit members are not eligible to receive both the TFO supplemental pay and the supplemental pay for the regular operation of a rotary-wing aircraft as outlined in 28.3 simultaneously.

f.   During the term of this agreement if any other units are created BSO and the IUPA agree to meet and confer to discuss whether such newly created unit (s) should be included in article 28.5.

g    For the current specialty units i.e. School Resource Deputies (SRD) and Quick Response Force (QRF), the parties agree to enter into a Memorandum of Understanding (MOU) for supplemental pay should such funding become available during the contract term.

28.6   The Sheriff reserves the right to convert any of the above-specified supplements to an hourly amount.

28.7   Bargaining unit members can receive no more than one supplemental assignment pay regardless of the number of concurrent special assignments. The bargaining unit member may choose the one supplemental pay he/she is to receive.

28.8   Bargaining unit members working a 12 hour (7K) shift regularly assigned to alpha shift, and not receiving a specialty unit assignment supplemental pay with the exception of Dive, SWAT or K-9 shall receive a bi-weekly supplement for hazardous duty pay in the amount of forty-eight ($48.00) in addition to their base salary.

Bargaining unit members working a 40 hour work week regularly assigned to alpha shift and not receiving a specialty unit assignment supplemental pay with the exception of Dive, SWAT, or K-9 shall receive a bi-weekly supplement for hazardous duty pay in the amount of eighty dollars ($80.00) in addition to their base salary.

28.9   Upon contract ratification, Quick Response Force (QRF) members who do not receive supplemental pay per Section 28.5, will receive five (5%) above his/her base hourly pay for each hour while activated by the Sheriff or designee.. Bargaining unit members are not eligible for this supplement while training for Field Force purposes.

28.10  Bargaining unit members shall receive four percent (4%) law enforcement first responder supplemental pay in addition to their base salary.

## ARTICLE 29

## <u>TRAINING AND TUITION</u>

29.1    The training and tuition policy will continue as it is currently administered in Sections 29.2 through 29.5 of this Agreement. Eligibility for payments outlined in this Article will not be included in the calculation of accrued leave payouts upon entering DROP or at the time of separation.

29.2    The Sheriff will pay the following incentive pay for law enforcement related education as defined by the State of Florida Criminal Justice Standards and Training Commission to all eligible bargaining unit members covered by this Agreement pursuant to Florida Statutes.

      a.    Completed Associate's Degree or equivalent..................$30.00 per month

        Completed Bachelor's Degree (Four years of college).......$ 80.00 per month

29.3    The Sheriff will pay bargaining unit members the following for completion of a Master's Degree $50.00 per month.

29.4    Attendance at training related to a bargaining unit member's duties as a law enforcement officer, approved by the chain of command and training shall be attended in an on-duty status. However, this provision does not apply to career development (incentive) courses, unless specifically approved by the chain of command.

29.5    Payment for attendance at approved career development training courses shall continue as prescribed by Florida Statutes, Section 943.22.

29.6    No overtime provision shall accumulate or apply when training is accomplished outside of Broward County.

29.7    The Sheriff agrees to allow bargaining unit members up to forty (40) hours on non-mandatory training per calendar year. In the event that there is an open seat in any such training and the bargaining unit member's shift is fully staffed, the bargaining unit member will be allowed to attend upon approval by the chain of command.

# ARTICLE 30

## TRANSFERS

30.1   It shall be the sole right of the Sheriff to transfer bargaining unit members. If a transfer is a permanent change in the bargaining unit member's assignment, shift, or days off (except in the Departments or assignments excepted herein), if possible under the circumstances, as determined by the Sheriff,  ten (10) working days notice will be provided prior to the transfer. Upon mutual agreement by both parties this provision may be waived.  Bargaining unit members attending in-service training are exempt from this provision.

30.2   Bargaining unit members who so request must be considered for assignment in the district closest to their residence of record.

30.3   Bargaining unit members who are involuntarily transferred to another unit will retain and carry with them any approved annual, holiday, sick or compensatory time. Involuntarily transferred bargaining unit members shall be entitled to use such time as previously scheduled.  Until the next scheduled bid process to determine shift assignment, any member who is involuntarily transferred shall be entitled to pick his/her shift preference at the new work location or facility as determined by Article 7 of this Agreement.

30.4   This Article shall not apply to changes in assignments, shift or days off in the following departments: CI, Regional Narcotics, Street Narcotics and Vice, Technical Services, CST Teams (in all Districts) and other special units and/or special assignments with twenty-four (24) hour responsibilities or those in units where routine work requires frequent changing of work hours, except where the bargaining unit member's assignment, shift or days off are changed solely to avoid the payment of court related overtime. It is agreed that the Sheriff has the authority to change the shifts of the above listed assignments, shift and days off in order to provide the highest level of protection to the cities of Broward County.  Further, it is understood that changes in assignments, shift or days off will not be made solely to avoid paying additional compensation to the bargaining unit member. However, it is understood that special events or public safety concerns are not considered changes in assignments, shift or days off solely to avoid paying additional compensation to the bargaining unit member. BSO will attempt to provide a minimum of two (2) weeks' notice for a change in assignment, shift or days off when BSO is made aware of a special event or public safety concern with at least a minimum of two (2) weeks' notice.

30.5   Request for transfer to another location shall automatically expire if not granted or denied within ninety (90) days of submission. If a bargaining unit member's request for transfer is denied at the district level, the denial shall be sent through the chain of command up through the rank of Major for review.

30.6    Bargaining unit members transferred into a specialized unit where a vacancy exists will be selected off an eligibility list if a list exists for that assignment.

30.7    Where a position is posted a Transfer Request/Specialized Unit Application Form must be submitted in order to be considered for the assignment.

# ARTICLE 31

## PERSONNEL RECORDS

31.1    Each bargaining unit member covered by this Agreement, or legal representative so designated in writing by the bargaining unit member, shall have the right to inspect his/her official personnel file. Such inspection shall take place at reasonable times and at the location where the official personnel file is kept. The bargaining unit member shall have the right to receive a duplicate copy of any item contained in his/her official file, at a reasonable cost of reproduction.

31.2    Inspection of personnel files will be limited in accordance with Florida law.

# ARTICLE 32

## DISCHARGE AND DISCIPLINE

32.1   The procedure for investigation of bargaining unit members, which could lead to disciplinary action, demotion, or dismissal, shall be as outlined in the Sheriff's Policy and Procedures Manual, as determined by the Sheriff, and the Florida Law Enforcement Officers Bill of Rights (Florida Statutes, 112.531, et seq).

32.2   Counseling, in either verbal or written format, shall not constitute discipline per se, but may be used by the Sheriff in cases where discipline is imposed for other reasons and may be utilized by the Internal Affairs Division.

32.3   The Sheriff or designee must have just cause for any discipline imposed on a bargaining unit member.

## ARTICLE 33

## GRIEVANCE PROCEDURE

33.1    Having a desire to create and maintain labor relations harmony between BSO and the IUPA , the parties hereto agree that they will promptly attempt to adjust all complaints, disputes, controversies or other grievances arising between them involving questions of interpretation or application of the terms and provisions of this Agreement as provided herein.

33.2    A grievance shall be defined as any controversy or dispute arising between the parties involving questions of interpretation or application of the terms and provisions of this Agreement.

   Bargaining unit members receiving disciplinary actions of a suspension of three (3) days or less, or a written reprimand shall be entitled only to review by the Administrative Appeal Board (hereinafter, "AAB").

33.3    Appeals to the AAB shall be submitted within fifteen (15) working days of the bargaining unit member's receipt of the final discipline (approved by the Department Head) by submitting the request to the Sheriff or his designee. The decision of the AAB shall be final and binding on both parties.

   For the purposes of this article, the term "working days" shall mean Monday through Friday, excluding weekends and holidays.

33.4    **AAB Structure Representation**:

   1. The AAB will consist of three (3) BSO employees. One 1) BSO employee will be selected from the IUPA list of candidates.  The candidate for the list will be selected as follows:

      a. Bargaining unit members, via their union representatives, will submit thirty (30) employee candidates to the Sheriff.

      b. The thirty (30) candidates will consist of thirty (30) bargaining unit members from the Department of Law Enforcement within the bargaining units representing deputies/sergeants and lieutenants.

      c. The Sheriff or designee will select fifteen (15) candidates from the list provided. These selected candidates will be eligible to randomly serve on the AAB for a twelve (12) month period.

      d. The Sheriff reserves the right to reject any submitted list of candidates without explanation and to request the submission of a revised list of

candidates.

    e.  The second employee on each AAB will be selected by the Sheriff in his sole discretion from the Department of Law Enforcement.

    f.  The third employee will be chosen from DLE employees and will be agreed upon by the other two (2) AAB members.

1.    The AAB will meet periodically at a predetermined date and time to hear employee appeals.

2.    The AAB members will alternate each month.

3.    The AAB members will consist of:

    a.  Three (3) members to be selected as described at Section 1 above.

4.    All three (3) members must be present for the AAB to convene.

5.    The Director of the Professional Standards Committee or designee will assist the AAB with procedural questions in ruling upon questions or issues during the hearing process. After all questions have been answered and the hearing concluded, only members of the AAB shall remain in the hearing room to consider the merits of the appeal and render findings.

33.5  **Hearing Process**:

1.    Attendance by the bargaining unit member at the AAB hearing is not required. Therefore, any request for a continuance by the bargaining unit member should only be granted upon exceptional circumstances.

2.    The AAB will hear and determine:

    a.  Bargaining unit member requested cases involving a three (3) day suspension or less.

    b.  Appeals based on previously filed written documents. No oral presentation may be made without supporting written documentation.

3.    Bargaining unit members may appear before the AAB to provide a verbal statement restricted to those issues generally outlined in their written appeal, amendments thereto and any documents attached for consideration by the AAB.  If the bargaining unit member chooses to appear, a representative of BSO will be permitted to appear before the AAB for the same purpose.

4.    The Director of the Professional Standards Committee or designee will ensure

that the bargaining unit member will be provided with copies of all documentation submitted to the AAB for its review including but not limited to, the case file, any BSO responses to the bargaining unit member's written appeal and any amendments thereto, no later than ten (10) working days prior to the scheduled hearing.

5. The AAB, upon its review of the case and all written materials, will make one of the following findings:

   a. Sustained
   b. Not sustained

After sustaining any violation, the AAB will:

   a. Review the bargaining unit member's prior disciplinary history and record.

   b. Consider the recommended discipline and either accept the recommended discipline, decrease the recommended discipline, or increase the recommended discipline.

   c. No discipline imposed by the AAB may exceed the jurisdiction of the AAB.

6. A written explanation shall be provided by each AAB member, whenever the AAB does not sustain a charge or increases or decreases the discipline.

7. The decision of the AAB will be binding on all parties, and no further appeal or grievance is permitted.

33.6   Charges that may result in a disciplinary suspension of four (4) days or greater, demotion or termination shall be processed through the Professional Standards Committee. If the final discipline rendered is not acceptable to the bargaining unit member's satisfaction, it can be appealed directly to Step Three as set forth below (arbitration). The Professional Standards Committee standard operating procedure will govern its processes.  IUPA may notify the PSC Director if it intends to have an additional representative attend a PSC hearing to observe a specific case on a PSC agenda.

33.7   Should differences or disputes arise concerning the terms and conditions of this Agreement between the parties to this Agreement or between the bargaining unit members covered herein and the Sheriff, the aggrieved party to this Agreement or any bargaining unit member(s), as the case may be, shall be required to use the following procedures.

**Step 1**

When there is a basis for a grievance, the IUPA representative on behalf of the

bargaining unit member(s), shall present a written grievance specifying the nature of the grievance and the contract provision(s) allegedly violated to the bargaining unit member's department head, or designee, and shall provide a copy to the Office of the General Counsel, within thirty (30) calendar days of the date on which the bargaining unit member(s) or the bargaining unit knew or could have reasonably known of the occurrence of the event allegedly giving rise to the grievance. Upon presentation of this written grievance to the department head, or designee, the bargaining unit member and the IUPA shall attempt to resolve the dispute and, within seven (7) calendar days thereafter, the department head or designee shall render a written decision to both the bargaining unit member(s) and to the IUPA. If no decision is rendered within the time period, the grievance shall automatically advance to the next step.

## Step 2

In the event the aggrieved bargaining unit member is not satisfied with the written decision rendered pursuant to Step 1, above, the grievance shall be presented by the IUPA within ten (10) calendar days after receipt of the written answer above, to the Sheriff, or his designee, and copy to the Office of the General Counsel, who shall, within ten (10) calendar days of the receipt of same, render a decision in writing. If no decision is rendered within the time period, the grievance shall automatically advance to the next step.

## Step 3

In the event a grievance processed through the grievance procedure set forth above has not been resolved, IUPA may file within ten (10) calendar days after the Sheriff, or his designee, renders a written decision on the grievance, a demand for arbitration upon the sheriff or his designee, with a copy to the Office of the General Counsel, and a request to the Federal Mediation and Conciliation Services (FMCS) to furnish a panel of eleven (11) names from which each party shall alternates striking a name until the eleventh (11th) is left which will give a neutral or impartial arbitrator. Each party shall have the right to strike one (1) panel in its entirety, but will required to pay the cost of the additional panel.

33.8

    a. BSO and the bargaining unit member (or the IUPA) shall mutually agree in writing as to the statement of the grievance to be arbitrated prior to the arbitration hearing, and the arbitrator therefore, shall confine his decision to the particular grievance thus specified. In the event the parties fail to agree on the statement of the grievance to be submitted to the arbitrator, the arbitrator will confine his consideration and determination to the written statement of the grievance presented in Step 2 of the grievance procedure as well as BSO's response to same.

    b. The arbitrator shall not be authorized to amend, modify, add to, or subtract from the provisions of this Agreement. He or she shall consider and decide

only the specific issues submitted to him or her by the parties and shall not have any authority to make a decision on any other issue beyond that presented in the Grievance asserted. The decision shall be based solely upon his/her interpretation of the meaning or application of the express terms of this Agreement or established past practices consistent with the evidence presented. If the arbitrator acts in accordance with this Section, the decision of the arbitrator shall be final and binding on both parties. Expenses incident to the services of the arbitrator shall be borne equally by both parties. In addition, court reporter services must be selected jointly from a BSO qualified pool. The court reporter attendance and transcript fees shall be borne equally by both parties.

c. Challenges to the arbitrability of the grievance shall be resolved by the arbitrator or by court as mutually determined by the parties. Should an arbitrator be selected to determine the issue of arbitrability, and the dermination is the matter is arbitrable, a new arbitrator will be selected.

33.9 Application of this procedure shall foreclose and preclude the grievant from appealing to any other available procedure; whether internal or external, including any available remedy at law. Nothing in this Article shall require the IUPA to process grievances for employees who are not members of the IUPA, in conformity with Florida law. Bargaining unit member(s) or the IUPA having selected the procedure contained herein to process a grievance shall be estopped from and waive the right to use any other available procedure for processing grievances or claims.

33.10 The time limits provided in this Article shall be strictly observed, and may be extended only by written agreement of the parties. On a case by case basis, the parties may mutually agree to bypass any step or steps in the grievance procedure.

33.11 The IUPA will retain a seat on the Professional Standards Committee (PSC) when the Committee is reviewing a case involving a bargaining unit member. However, their attendance is not mandatory. Should IUPA elect not to attend, the PSC will proceed with the disciplinary review and will make recommendations if a quorum is present. The Professional Standards Committee will be guided by the Sheriff's Policy Manual (SPM).

33.12 A moratorium will be observed annually by the parties during the winter holiday season. The moratorium will commence every December 23 through January 4. If January 4 falls on a Saturday or Sunday, the moratorium will be extended until the end of the next day which is not a weekend day. During the moratorium period all grievance time limits shall be tolled.

## ARTICLE 34

## <u>DRUG AND ALCOHOL TESTING</u>

34.1   BSO and the IUPA have negotiated a Drug and Alcohol Free Workplace Policy and Work Rules (hereinafter, the "Policy") pursuant to the provisions of the Florida Drug-Free Workplace Program, as provided in Section 440.102, Florida Statutes (1997), and other applicable law.  BSO and IUPA agree that if Section 440.102, Florida Statute is amended during the term of this Agreement with regard to the medical use of cannabis, the parties will reopen and negotiate this Article with regard to any such amendments.  The Policy is incorporated herein and made a part of this Agreement. BSO's Policy prohibits illegal use of drugs and alcohol abuse, which might affect bargaining unit members in the performance of their duties. This policy gives BSO the right to test bargaining unit members under certain circumstances and also provides grounds for disciplining bargaining unit members who fail to comply with the Policy.  All bargaining unit members must comply with the requirements of the Policy, and will be subject to appropriate disciplinary action, up to and including discharge, in the event of non-compliance with the Policy.

34.2   The Policy is available to all current employees electronically on the BSO Informant.

34.3   In the event that legislation and/or administrative regulations are enacted which amend, supplement or alter in any way the requirements set forth in the Florida Drug-Free Workplace Program, or which may enable BSO to reduce the cost or limit the increase in the cost of health, life, liability or workers compensation insurance premiums, BSO may change the Policy to comply with such legislation and/or administrative regulations. BSO will inform the IUPA in writing prior to implementing any such change(s) in the Policy.

## ARTICLE 35

## CARE AND MAINTENANCE OF CANINES

35.1   Bargaining unit members who are canine handlers are responsible for the care and maintenance of the dog(s) assigned to them.  No bargaining unit member will be assigned more than two (2) dogs.  The care and maintenance of the assigned dog(s) shall be reasonable as determined by appropriate supervisors.

35.2   At the sole discretion of the Sheriff, care and maintenance of each dog may be required to be performed during times other than the canine handler's scheduled hours. The parties agree that a canine handler will reasonably spend no more than one hour per day (seven days per week) in the care and maintenance of the assigned dog(s).

35.3   In lieu of the required preparation and submission of timesheets for receipt of overtime pay for the agreed upon one (1) hour of overtime per day for the care and maintenance of his/her dog(s) for a total of twenty dollars ($20.00) per day shall be converted to two hundred eighty dollars ($280.00) per pay period. Additionally, this amount will still be paid to the canine handler for any days of the week that the assigned dog(s) is boarded in a kennel/facility paid for by BSO.  This amount of two hundred eighty dollars ($280.00) per pay period will be paid regardless of the number of dogs assigned to the handler.

35.4   Only a deputy with an assigned dog(s) will be eligible to receive this supplement.

35.5   This supplement is not considered supplemental assignment pay, as the term is used in Article 28 of the parties' CBA, and is not subject to the restrictions set forth in Article 28.

35.6   The amount paid as a supplement will constitute overtime in the amount of one (1) hour per day at the rate of thirteen dollars and thirty four cents ($13.34) and that is the amount of payment and estimation of time required for the care and maintenance reasonably reflects the amounts necessary for the required duties. Eligibility for the payment outlined in this Article will not be included in the calculation of accrued leave payouts upon entering DROP or at the time of separation.

35.7 BSO will provide assigned canine handlers with canine related pest control services at the bargaining unit member's residence.

## ARTICLE 36

## INSURANCE

36.1   **Medical and Dental Insurance**

Effective October 1, 2018, medical premium increases for the level of coverage and plan the bargaining unit member is enrolled in shall be split between BSO and the bargaining unit member.   BSO will pay 90% of the medical premium increase every year and the bargaining unit member will pay 10% of the medical premium increase every year. The 10% premium increase will be added to the bargaining unit member's bi-monthly payroll deductions. Medical insurance premium changes are effective January 1st.  Employee contributions (changes to payroll deduction) are effective the first check date following January 1st.

BSO agrees to provide the final medical insurance premium rates for the next calendar year once determined to include the breakdown by plan type and coverage level.

Effective January 1, 2019, bargaining unit members will be responsible for the following monthly employee contributions towards medical premiums:

| Medical<br>Employee Monthly Payroll Deduction | | | |
|---|---|---|---|
| | Employee Only | Employee + 1 Dependent | Employee + 2 or more Dependents |
| **HNONLY-1** | $56.28 | $116.38 | $166.38 |
| **HNONLY-2** | $77.86 | $177.92 | $227.92 |
| **HNOPTION** | $93.50 | $235.22 | $285.22 |
| **OAMC*** | $126.44 | $318.62 | $368.62 |

*only available for employees who reside outside of the HNOnly/HNO service area

Effective January 1, 2020, bargaining unit members will be responsible for the following monthly employee contributions towards medical premiums:

| Medical Employee Monthly Payroll Deduction | | | |
|---|---|---|---|
| | Employee Only | Employee + 1 Dependent | Employee + 2 or more Dependents |
| **HNONLY-1** | $62.52 | $132.66 | $182.66 |
| **HNONLY-2** | $84.68 | $195.74 | $245.74 |
| **HNOPTION** | $101.62 | $255.52 | $305.52 |
| **OAMC*** | $138.06 | $348.06 | $398.06 |

*only available for employees who reside outside of the HNOnly/HNO service area

There will be no increase in premiums, other than the monthly bargaining unit member contribution rates as stated above, co-pays or deductibles for group medical insurance for the term of this Agreement. For those calendar years, bargaining unit members covered by this Agreement shall receive the same group medical and dental insurance plan provided to other bargaining unit members in accordance with the BSO group medical and dental insurance program.

36.2 **Life Insurance**

    a. Life insurance coverage for bargaining unit members will be provided in an amount equal to one year base salary, and the cost shall be paid by BSO for the term of this agreement.

    b. Each bargaining unit member who qualifies for retirement under the Florida Retirement System (FRS) or from a contract city pension plan is eligible to continue a $24,000.00 life insurance policy under the group rates at the retiree's expense.

36.3 **Disability Insurance**

    a. Disability insurance will be provided for any member who is disabled on or off the job.

    b. BSO agrees to pay seventy percent (70%) of the premium for any member of

the bargaining unit who elects to participate in the disability coverage.

At least 60% of the bargaining unit members must elect to participate in this benefit in order for the Sheriff to provide disability insurance.  If at least sixty (60%) percent of the bargaining unit members do not participate, the Sheriff may, in his sole discretion, terminate this benefit.

36.4   **Family Health Insurance**

The Sheriff agrees to provide Family Health insurance benefits to bargaining unit members disabled due to certain on-duty injuries in accordance with the Alu-O'Hara Act (1996).

## ARTICLE 37

## VACATION & HOLIDAYS

37.1   During the term of this Agreement the following vacation periods shall be granted to bargaining unit members for the amount of time of continuous service with BSO as follows:

| Years of Work Completed | Vacation Hours |
| --- | --- |
| 1 year - 3 years | 80 hours |
| 4 years - 10 years | 120 hours |
| 11 years and above | 168 hours |

37.2   Any bargaining unit member who has sustained an injury in the line of duty and who has vacation time previously scheduled which falls within the period of disability shall be entitled to reschedule the vacation time after return to duty.  It is the intent of the parties that any previously scheduled vacation time falling within a period of disability incurred in the line of duty shall not be forfeited or otherwise expended due to the unforeseeable circumstance of the injury.

37.3   During the term of this Agreement, the Sheriff recognizes the following eighty-eight (88) hours of paid holidays:

NEW YEAR'S DAY
MARTIN LUTHER KING JR. DAY
PRESIDENT'S DAY
MEMORIAL DAY
INDEPENDENCE DAY
LABOR DAY
VETERAN'S DAY
THANKSGIVING DAY
FRIDAY AFTER THANKSGIVING DAY
CHRISTMAS DAY
ONE (1) FLOATING HOLIDAY

(Employees must be employed by January 1st to be eligible for the floating holiday.)

37.4   Bargaining unit members scheduled to work and who are directed to work a designated holiday shall be paid at the bargaining unit member's straight time rate of pay for all hours worked on the holiday, plus either eight (8) hours holiday pay at the straight time rate of pay or, at the bargaining unit member's option, eight (8) hours of compensatory time at the straight time rate of pay.

37.5   Bargaining unit members not scheduled to work, but who do work on a designated holiday, shall receive the rate of one and one-half (1 1/2) times the hourly rate of the bargaining unit member's straight time rate of pay for all hours worked on the holiday, plus eight (8) hours pay for the holiday. Compensatory time shall be computed at one and one-half (1 ½) times the hours worked.

37.6   Reporting to work on the following holidays will be non-discretionary in nature by the bargaining unit member, unless directed to do so.  The Sheriff or designee shall have sole discretion to determine if a bargaining unit member is required to report to work on a holiday which falls on the bargaining unit members regularly scheduled work day:

1. Thanksgiving Day
2. Day after Thanksgiving
3. Christmas
4. New Year's Day
5. Fourth of July

All other holidays may be worked or taken off, at the discretion of the bargaining unit member, if the scheduled holiday falls on the bargaining unit members regularly scheduled work day.  Employees electing to work the holiday will be required to complete a daily report for that holiday to document the work completed.

Bargaining unit members assigned to a specialty unit whose regularly scheduled day to work falls on a non-discretionary designated holiday and who are given the day off, may request to work an alternate assignment.  If approved to work, the bargaining unit member will be assigned to an alternate assignment as determined by command, in order to meet the operational needs of the agency.

Bargaining unit members whose shift is greater than eight (8) hours and whose regularly scheduled day to work falls on a non-discretionary designated holiday who do not work, will be paid eight (8) hours pay for the holiday and can elect to either supplement their shift hours over eight (8) hours with accrued leave or work the additional hours within the same pay period, as long as it does not result in overtime.

The Sheriff or designee reserves all rights to assign those employees who work on a holiday so as to accomplish the operation needs of the agency, should the appropriate designated work exist.  To the extent that any such holiday assignment can be viewed as a transfer or schedule change, any section of the collective bargaining agreement requiring specific notice requirement will be deemed waived.
Once a date for the use of floating holiday is selected, the bargaining unit member must take the time off unless a request to change in date for this holiday will not

create a fiscal and/or operational hardship.

Upon contract ratification, a floating holiday accrued within the current calendar year may be cashed out as an eight (8) hour day.

37.7   Every effort will be made for each bargaining unit member to be scheduled off on at least one (1) of the holidays between (and including) Thanksgiving and New Year's Day.

37.8   a)   Except as otherwise stated in this article, a bargaining unit member may not accrue more than a cumulative total of three hundred twenty (320) hours of holiday and vacation time. All accrued time in excess of three hundred twenty (320) hours or a "grand-fathered" cap will be lost by the bargaining unit member if not used within the calendar year.  A bargaining unit member who has made reasonable attempts to use excess accruals and has been denied said requests shall submit a written request to the Director of Human Resources via the chain of command for authorization to carry excess accruals into the next calendar year.

## EXCEPTION: GRANDFATHER CLAUSE

a)   Bargaining unit members having accrued annual and holiday leave hours in excess of three hundred twenty (320) hours as of pay date October 7, 1994 shall be entitled to a "grand-fathered" cap of their accrued time as of that date.

b)   **DROP/Retirement**

Once enrolled in DROP, bargaining unit member's annual/holiday leave cap will be adjusted to one hundred and sixty eight (168) hours if the bargaining unit member elected to receive a payout of annual/holiday leave at the time of enrolling in DROP.  At the time of separation, the annual/holiday leave payout will be in accordance with the Sheriff's Policy Manual (SPM) 4.3.15.

Those bargaining unit members who are within two (2) years of retirement/participating in the DROP may carry over the above annual/holiday leave 320 hour cap but may not exceed 500 hours of annual/holiday leave.

Those bargaining unit members who are within one (1) year of retirement/participating in the DROP may carry over the above 500 hour cap, but may not exceed a payout of 580 hours.

A bargaining unit member must sign an irrevocable request, at the time of his/her decision.

Once enrolled in DROP, bargaining unit members have the option of accruing or receiving payment for holidays.

All other DROP procedures will be accordance with the Sheriff's Policy Manual (SPM 4.3.15).

**Example**:

A bargaining unit member has four hundred (400) hours of annual leave and eighty (80) hours of holiday leave on the accrual report for pay date October 7, 1994.  This is over the three hundred twenty (320) cap maximum. This bargaining unit member would be grand-fathered in at four hundred eighty (480) hours. Before December 31 of each calendar year, the bargaining unit member will need to use any excess time over four hundred eighty (480) hours or forfeit the time. This "grand-fathered" cap remains effective for each successive calendar year unless the bargaining unit member uses an amount of annual and/or holiday leave so as to reduce total accrued time below the cap as of December 31 of each calendar year. This new, lower balance of accrued time becomes the bargaining unit member's new-grand fathered cap.

**Example:**

A bargaining unit member has a "grand-fathered" cap of four hundred eighty (480) hours, but at the end of the calendar year (December 31), the bargaining unit member's cumulative annual and holiday leave total is four hundred (400) hours. The bargaining unit member's new "grand-fathered" cap is four hundred (400) hours.

37.10 **Personal Day**

Bargaining unit members covered by this Agreement will be allotted, on an annual basis, effective no later than February 1st of each year, one (1) 8-hour personal day to be utilized at the discretion of the bargaining unit member, with prior approval from his/her immediate supervisor. The personal day must be utilized by December 31st of each year and cannot be accumulated for any reason.

Effective January 1, 2020, bargaining unit members assigned to a 12-hour shift within the first full pay period after January 1st of each contract year shall receive one (1) additional 8-hour personal day to be utilized at the discretion of the bargaining unit member, with prior approval from his/her immediate supervisor. The additional personal day must be utilized by December 31st of each year and cannot be accumulated for any reason.

A personal day may be used in increments.

# ARTICLE 38

## <u>MILITARY</u>

The Sheriff will apply the Military Leave Policy as stated in the Sheriff's Policy and Procedures Manual, State and Federal Law.

# ARTICLE 39

## SICK LEAVE

### 39.1  Sick Time Payout

Years of service for this section shall be determined by the bargaining unit member's current hire date.

    a.  Good standing, for this section, shall be determined as a bargaining unit member resigning or retiring without charges pending. If a bargaining unit member has been notified that charges are pending against him/her then said bargaining unit member must give a minimum of sixty (60) days' notice of his/her resignation or retirement date.  If the bargaining unit member is terminated prior to his/her resignation or retirement date, the bargaining unit member will not be considered leaving in good standing.

    b.  Any bargaining unit member who is within sixty (60) days of his/her DROP date and has been notified that charges are pending against him/her that, if sustained, would likely result in termination as decided at the sole discretion of the Sheriff or his designee, will not be considered leaving in good standing.  If the charges are subsequently not sustained by the Professional Standards Committee (PSC), the records will be amended to reflect that the bargaining unit member left in good standing and the bargaining unit member will be entitled to his/her sick leave payout to be paid within thirty (30) days at the employee's rate of pay at the time of separation.  If the charges are subsequently sustained by the PSC, the PSC will then make a determination as to the level of discipline that would have been recommended had the employee still been employed with BSO. If the recommendation is anything less than termination, the records will be amended to reflect that the bargaining unit member left in good standing and the bargaining unit member will be entitled to his/her sick leave payout to be paid within thirty (30) days at the employee's rate of pay at the time of separation.  If the recommendation is for termination, the bargaining unit member will not be considered leaving in good standing.

### Zero (0) to Ten (10) Years

Bargaining unit members, who have less than ten (10) years of service, will not receive any sick leave compensation upon separation from the agency.

### Ten (10) to Fifteen (15) Years

Bargaining unit members who have at least ten (10) years of service, but less than fifteen (15) years, will not receive any sick leave compensation upon separation from the agency for any reason other than normal retirement (defined by FRS or contract city) or the death

of the bargaining unit member.

Bargaining unit members leaving in good standing who have at least ten (10) years of service but less than fifteen (15) years, upon normal retirement (defined by FRS or contract city) or death, will receive, upon separation fifty (50%) percent of his/her unused accumulated sick leave up to a maximum of four hundred eighty (480) hours computed at the bargaining unit members current rate of pay.

### Fifteen (15) to Twenty (20) Years

Bargaining unit members leaving in good standing who have at least fifteen (15) years of service but less than twenty (20) years of service, upon separation from the agency for any reason other than normal retirement (defined by FRS or contract city) or the death of the bargaining unit member will receive, upon separation twenty five (25%) percent of his /her unused accumulated sick leave up to a maximum of two hundred forty (240) hours, computed at the bargaining unit members current rate of pay.

Bargaining unit members leaving in good standing who have at least fifteen (15) years of service but less than twenty (20) years, upon normal retirement (defined by FRS or contract city) or the bargaining unit members death, will receive, upon separation sixty five (65%) percent of his/her unused accumulated sick leave up to a maximum of six hundred twenty four (624) hours, computed at the bargaining unit members current rate of pay.

### Twenty (20) Years of Service

Bargaining unit members leaving in good standing who have at least twenty (20) years of service upon separation from the agency for reasons other than normal retirement (defined by FRS or contract city) or the death of the bargaining unit member will receive, upon separation twenty five (25%) percent of his/her unused accumulated sick leave up to a maximum of two hundred forty (240) hours, computed at the bargaining unit members current rate of pay.

Bargaining unit members leaving in good standing who have at least twenty (20) years of service, upon normal retirement (defined by FRS or contract city) or the bargaining unit member's death, will receive, upon separation one hundred percent (100%) of his/her unused, accumulated sick time up to a maximum of nine hundred sixty (960) hours, computed at the bargaining unit member's current rate of pay.

### Twenty-Five (25) Years of Service

Bargaining unit members leaving in good standing who have at least twenty-five (25) years of BSO or combined BSO and contract city sworn service, or the bargaining unit members death, will receive, upon separation one hundred percent (100%) of his/her unused accumulated sick leave up to a maximum of one thousand one hundred sixty (1160) hours, computed at the bargaining unit members current rate of pay.

39.2  **IUPA Sick Leave Donation**

At the Sheriff's discretion, bargaining unit members may request sick leave donations to be provided solely by bargaining unit members within the IUPA, in addition to the current BSO sick leave pool and/or donated leave program.

a.  All requests for sick leave donations must be limited to extenuating or catastrophic circumstances and forwarded to the Sheriff for approval prior to receiving donated sick leave.  The requesting member must have applied for the BSO donated leave program and have received denial or the maximum benefit payable prior to requesting additional sick leave donations from the IUPA Sick Leave Donation Program.

b.  The maximum number of donated sick hours a bargaining unit member may receive and utilize is three hundred and twenty (320) hours per calendar year.

c.  The maximum number of hours a bargaining member may donate is eight (8) hours per calendar year and must be donated in four (4) hour increments.  The hours donated to a receiving bargaining unit member will only be deducted from the donating employee's bank on an as needed basis in the order of receipt from the donated member.  No hours will be allowed to be pooled for use on a future date or occurrence.

d.  Donating members must have a minimum of 500 hours of sick leave accruals to be eligible to donate.

39.3  **Bonus Day**

Bargaining unit members will earn an eight (8) hour bonus day based upon the following calculations:

a.  Bargaining unit members, after completing thirteen (13) pay periods that no sick leave is taken, have the option to take a bonus day or pay (regular time). If the bonus day is selected it must be taken within thirteen (13) pay periods. If a bargaining unit member uses no sick leave for the immediately following thirteen (13) pay periods, the bargaining unit member has the option to take an additional two (2) bonus days or receive pay (regular time). If bonus days are selected, they must be taken within 13 pay periods.  Effective upon the first full pay period following contract ratification, once the bargaining unit member receives the (2) two-day bonus, they will continue to receive the (2) two-day bonus until the bargaining unit member uses sick leave then the program starts over again with one (1) bonus day at the end of the next 13 pay periods.  The maximum number of bonus days that a bargaining unit member can earn in any continuous twelve (12) month period in which no sick leave is taken is four (4) bonus days.  Each thirteen (13) pay periods is measured from the last day the bargaining unit

member used a sick day.  Bonus days earned are not cumulative and must be taken within the terms of this section.

b.  Bonus days will not be given to employees who do not complete 13 pay periods.

c.  Employees using sick leave on approved FMLA for a family member will not lose their eligibility for a bonus day.

d.  Earned bonus days may be used in increments.

e.  Bargaining unit members who elect to receive pay for an earned bonus day will receive the payment as an eight (8) hour day.

# ARTICLE 40

## PROBATION

40.1   The probationary period shall be regarded as an integral part of the employment process. It shall be utilized for closely observing the bargaining unit member's work and for securing the most effective adjustment of the new bargaining unit member to his/her position, and for "separating" bargaining unit members whose performance does not meet the required standards.

40.2   The standard probationary period for all new bargaining unit members will be twelve (12) months of continuous (not counting worker's compensation time, family and medical leave act time, or time in suspension as a result of discipline) employment from the date that the bargaining unit member obtains certification and is working as a full-time bargaining unit member of BSO.  Bargaining unit members will be considered probationary until they have performed the duties of a full-time certified law enforcement deputy for twelve (12) consecutive months. Prior to expiration of this time period, the Sheriff shall either: (1) approve retention of the bargaining unit member, at which time the bargaining unit member shall be granted permanent status; or (2) extend the bargaining unit member's probation for up to an additional six (6) months; or (3) in the event the Sheriff shall fail to approve retention, the bargaining unit member shall automatically be separated from employment, said separation being absolutely final, with no rights of appeal to any authority including either the grievance/arbitration procedure contained herein, or any disciplinary review process established by the Sheriff's policy and procedure.

40.3   During a newly hired bargaining unit member's probationary period, he/she, serves at the will and pleasure of the Sheriff.  Accordingly, a newly hired probationary bargaining unit member may not grieve, or otherwise challenge by any other available procedure, any decision involving discipline and/or discharge.

40.4   During the initial probationary period, no bargaining unit member may request a voluntary transfer.

40.5   The Sheriff may evaluate the performance of bargaining unit members during their initial probationary period. Any such evaluation may be discussed with the bargaining unit member, and he/she will be counseled as to any problems that may reasonably cause him or her not to be granted permanent status.

40.6   In the event a bargaining unit member received a promotion from a lower to a higher position, that bargaining unit member shall serve a probationary period of nine (9) months of continuous employment from the date of promotion. Effective immediately upon promotion, the bargaining unit member will receive no less than the basic rate of pay for the promoted classification that is higher than the previous

base rate of pay by at least five percent (5%) provided the increase is within the promoted job classification salary range maximum. Upon the expiration of said nine (9) month time period, the appropriate official of BSO may recommend retention of the bargaining unit member in the position to which he or she was promoted.  In the event the Sheriff fails to approve retention, the bargaining unit member shall automatically revert to his/her former position, without loss of (previous) rights or benefits unless the bargaining unit member is terminated for disciplinary reasons.  Such reversion may not be appealed through the grievance/arbitration procedure.

## ARTICLE 41

## PROMOTIONAL OPPORTUNITIES

41.1    Promotional examinations for the position of sergeant and/or lieutenant, will be posted at least ninety (90) days in advance of the examination with the posting to include:

    a.  The date the written examination is to be given;
    b.  The type of examination (written, oral, other);
    c.  The weight assigned to each step of the process;
    d.  The reading list (i.e., study materials) for the written examination.

Participants will be notified of the location of the examination at least 14 days prior to the actual examination date.

41.2    BSO agrees to maintain a promotional eligibility list for the positions of sergeant and lieutenant for a period of two (2) years.  A promotional exam will be given no later than ninety (90) days after the depletion of any eligibility list.

41.3    The candidate evaluation method, ranking and qualification requirements shall be determined by the Director of the Bureau of Human Resources. The Bureau of Human Resources will be available to meet with IUPA representatives to gain information, insight and suggestions regarding the selection process.  BSO agrees that no candidate shall fill a vacant sergeant position or otherwise enter the bargaining unit as a sergeant unless he or she has a minimum of two (2) years BSO Deputy Sheriff law enforcement experience immediately prior to the posting closing date.

41.4    BSO agrees that the promotional process for sergeant and lieutenant will include more than one stage.  Appropriate job-related examination processes which may include (individually or in combination), rating of experience and/or education, written examination, oral examination, assessment center exercises, performance/practical examination or other generally accepted job-related evaluation processes may be used.

The results of the promotional examination process will be a list of bargaining unit members organized by final earned scores.  Promotional appointments for each vacant position shall be made from the then top five (5) scores. Every sixth (6th) vacant position shall be filled by the Sheriff without regard for the rule of five (5). The promotional examination process shall be final and binding and without further recourse and not grievable.

41.5　　　One (1) IUPA representatives will be entitled to be present as an observer at all group promotional exams.　However, the IUPA observer cannot be currently participating in the promotional process.

41.6　　　**Educational Credit** - It is understood and agreed that the following educational degrees must be completed prior to the posting closing date for the percentage points to be applied to their passing final score:

> Bachelor's Degree　　　.5 percentage points
> Master's Degree　　　1.0 percentage points

In order to receive the additional points for education, the required documents must be provided at time of application, as required on the posting. This paragraph shall be enforced for all promotional lists that will be created, and no points will be added to the scores of the current promotional lists.

Bargaining unit members are not eligible to receive both educational credit and years of service credit.

41.7　　　**DLE Deputy Sheriff – Years of Service Credit** – It is understood and agreed that the following years of service as Law Enforcement Deputy Sheriff with BSO or Contract City must be completed prior to the posting closing date for the percentage points to be applied to their passing final score:

Completion of Ten (10) to Fifteen (15) Years　　　.5 percentage points

Completion of Sixteen (16) Years or More　　　1.0 percentage points

Bargaining unit members are not eligible to receive both years of service credit and educational credit.　The points will be non-cumulative.

41.8　　　**Field Training Deputy (FTD)** - At the completion of one (1) continuous year of active FTD service, the FTD will receive .20 percentage points added to a passing final score of any promotional opportunity for Sergeant in which he or she is eligible.　Every additional continuous year thereafter, as long as the FTD continues to remain active as an FTD, he or she shall receive an additional .20 of a percentage point added to their passing final score of any promotional opportunity for Sergeant in which he or she is eligible.　These points will accumulate until a maximum of one (1) percentage point is reached and will remain accrued and available for use on any promotional exam for Sergeant until a promotion is reached.　These accrual points will not expire until used. Once the FTD has received a promotion to Sergeant, he or she will no longer be eligible to receive any points as set forth in this

paragraph.  Eligibility for these additional .20 percentage point calculation (s) will be verified in writing by the Training Division and supplied to the Bureau of Human Resources by the bargaining unit member with their application for promotion who seeks to have the additional partial points added to his/her passing final promotional score.  This paragraph shall be enforced for all promotional lists that will be created, and no additional points will be added to the scores of the current Sergeant's promotional list.

## ARTICLE 42

## REPRODUCTION OF AGREEMENT

BSO will provide seventy-five (75) copies of this Agreement to the Union. This Agreement will be made available on the BSO Intranet site, BSO Informant.  BSO will provide to the IUPA one electronic disc copy for reproduction.

# ARTICLE 43

## <u>SAVINGS CLAUSE</u>

If any provision of this Agreement, or the application of such provision, shall be rendered or declared invalid by any court of competent jurisdiction, the remaining parts or portions of this Agreement shall remain in full force and effect. In the event of the foregoing, the parties agree to renegotiate a replacement provision, after written notice.

# ARTICLE 44

## TAKE HOME VEHICLES

41.1  Upon contract ratification, bargaining unit members assigned vehicles shall be authorized to take the vehicles home as long as they reside in the tri-county area (i.e. Dade County, Broward County, Palm Beach County).  Effective pay period beginning October 12, 2019, any bargaining unit members hired on or after October 1, 2019, who reside in Dade or Palm Beach County will be charged twenty-five dollars ($25.00) per pay period. Additionally, any bargaining unit members hired on or after October 1, 2019, whose residence becomes Dade or Palm Beach County will be charged twenty-five dollars ($25.00) per pay period.

41.2.  Upon contract ratification, bargaining unit members that reside outside the tri-county area will not be authorized to take their vehicles home.  The Sheriff agrees to exempt from this prohibition the five (5) bargaining unit members identified in Appendix B. The five (5) bargaining unit members will be grandfathered in to retain a take-home vehicle and pay the $105 per pay period or leave their vehicle within Broward County. If any of the aforementioned grandfathered five (5) bargaining unit members relocate back into the tri-county area, he or she shall be removed from Appendix B and shall be authorized to take the assigned vehicle home in accordance with section 41.1.

## ARTICLE 45

### TERMS OF AGREEMENT

This Agreement shall become effective upon ratification and execution by both parties and, thereafter, shall be effective from October 1, 2018 through and including September 30, 2021. The parties agree to reopen Article 19 – Wages during the term of this agreement in accordance with the terms set forth in Sections 19.2 and 19.3.

**Gregory Tony**
**Sheriff of Broward County**

**Date**  7/22/19

**International Union of Police Associations, AFL-CIO**

By: Jeff Bell, President, Local 6020
Date  7/22/19

**Terrence Lynch**
**Office of the General Counsel**

7/24/19

**Date**

**Office of the General Counsel**
**International Union of Police**
**Associations, AFL-CIO**

By: Gary E. Lippman,
     Associate General Counsel
Date  7/22/2019

**Witnesses:**

RATIFIED

on July 31, 2019

## APPENDIX "A" – SALARY SCHEDULE

| Step | DLE Deputy Sheriff<br>Effective<br>October 2018 |
|---|---|
| 1 | $51,638 |
| 2 | $54,658 |
| 3 | $57,854 |
| 4 | $61,237 |
| 5 | $64,818 |
| 6 | $68,610 |
| 7 | $72,627 |
| 8 | $76,840 |
| 9 | $80,682 |
|  |  |
|  | **Effective Pay Period Beginning<br>4.13.19** |
| 10 (20 YOS) | $82,295 |
|  |  |

| Step | DLE Sergeant<br>Effective<br>October 2018 |
|---|---|
| 1 | $62,774 |
| 2 | $66,452 |
| 3 | $70,344 |
| 4 | $74,465 |
| 5 | $78,826 |
| 6 | $83,445 |
| 7 | $88,336 |
| 8 | $93,460 |
| 9 | $98,132 |
|  |  |
|  | **Effective Pay Period Beginning<br>4.13.19** |
| 10 (20 YOS) | $100,095 |
|  |  |

\* Annual rates above have been rounded to the nearest dollar

## APPENDIX "B"

## ARTICLE 44 - TAKE HOME VEHICLE –GRANDFATHER PROVISION

The following CCN's reflect those bargaining unit members grandfathered in pursuant to Article 44.2.

1. 13937
2. 14523
3. 10872
4. 9484
5. 14389

# APPENDIX "C"

**MEMORANDUM OF UNDERSTANDING**
**BY AND BETWEEN**
**THE BROWARD SHERIFF'S OFFICE**
**THE INTERNATIONAL UNION OF POLICE ASSOCIATIONS**
**LOCAL 6020, LAW ENFORCEMENT DEPUTIES/SERGEANTS BARGAINING UNIT,**
**BROWARD COUNTY PROFESSIONAL FIRE FIGHTERS AND PARAMEDICS,**
**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 4321**
**AND**
**THE FEDERATION OF PUBLIC EMPLOYEES**

This Memorandum of Understanding is entered into by and between International Union of Police Associations Broward Sheriff's Office Law Enforcement Deputies/Sergeants Association Local 6020, AFL-CIO (hereafter "IUPA"), Broward County Professional Fire Fighters and Paramedics, International Association of Firefighters, Local 4321 (hereinafter, "IAFF') and the Federation of Public Employees (hereinafter "FOPE") and the Broward Sheriff's Office (hereinafter "BSO").

### Witnesseth:

**WHEREAS,** IUPA is the certified, exclusive representative of the sworn Law Enforcement Deputies/Sergeants, as listed in Public Employees Relations Commission certification (hereinafter "PERC") #1873; IAFF is the certified, exclusive representative of the certified Firefighters and Paramedics, as listed in the PERC certification #1466; and, the FOPE is the certified, exclusive representative for sworn Deputies/Sergeants - Detention, as listed in PERC certification #1873 for the purposes of collective bargaining with respect to wages, hours, and terms and conditions of employment; and

**WHEREAS,** IUPA, IAFF, and FOPE are parties to individual collective bargaining agreements ("CBA") with BSO for the period of October 1, 2015 through September 30, 2018; and

**WHEREAS,** the above referenced CBAs are silent as to employee reallocations between the aforementioned bargaining units, and the IUPA, IAFF, and FOPE desire to memorialize the process by which sworn or certified members of each bargaining unit may be allocated to a positon between these bargaining units; and

**WHEREAS,** BSO is in agreement with the process of sworn/certified reallocations between the aforementioned bargaining units.

**IT IS THEREFORE** agreed to as follows:

1.     This Memorandum of Understanding is entered into for the purpose of providing the terms upon which sworn/certified reallocations between the IUPA, IAFF and FOPE sworn or certified members are to be conducted.

Page 1 of 4

2.     A sworn/certified reallocation, as used in this agreement, means a Department of Detention Deputy or Sergeant or a Department of Law Enforcement Deputy or Sergeant seeking to reallocate to the job classification of Department of Fire Rescue Firefighter/Paramedic, or a Department of Fire Rescue Firefighter/Paramedic, Driver Engineer or Lieutenant seeking to reallocate to the job classification of a Department of Detention Deputy or Department of Law Enforcement Deputy.

3.     All such sworn/certified reallocations may be made only to an available vacant position, and are at the sole discretion of the Sheriff or Sheriff's designee.  The Sheriff's decision to grant or deny a sworn/certified reallocation request shall not be grieveable.

4.     For all employees identified in subsection 2 above who are seeking to reallocate from one position to another, the employee must meet the minimum requirements/qualifications of the position applied for, and successfully complete the designated application, selection process and training program.

5.     The base salary, excluding supplements, for the new job classification will be based on the employee's base salary in the previous job classification immediately prior to reallocation.  The salary step that the employee will be placed on for the new job classification will be the step closest to his/her salary in the previous job classification immediately prior to reallocation, excluding longevity steps unless the employee meets the years of service requirements for such longevity step in the new job classification.  Additionally, in accordance with the Sheriff's Policy Manual, the employee's new anniversary date for the purpose of step increases in the new job classification will be based on the reallocation date.  Further, the reallocated employee will maintain his/her current accrual banks and will be governed by his/her new collective bargaining agreement regarding usage and future accruals.

6.     If the employee reallocating under this agreement has sufficient years of service to qualify for a longevity step in the new job classification, the employee will be placed in the longevity step corresponding to such years of service.  If the employee's salary in the previous job classification is higher than the salary range for the longevity step that he/she qualifies for in the new job classification, he/she will be slotted onto the appropriate longevity step and not redlined.

7.     For the purposes of seniority, the employee reallocating to a new job classification will maintain his/her hire date seniority, but his/her classification and bargaining unit seniority will reset beginning on the day he/she reallocates into the new job classification.

8.     An employee reallocated as a result of this agreement may return to his/her previous job classification within ninety (90) days of the reallocation with no loss of pay or

**Page 2 of 4**

seniority received prior to the reallocation. An employee may return to his/her previous job classification after ninety (90) days but no more than one (1) year after the reallocation, only if there is there is a vacancy within his/her previous job classification. Employees returning to their previous job classification after ninety (90) days and up to one (1) year will receive their base salary including any increases he/she would have received had he/she remained in the previous job classification and any applicable supplements based upon their assignment, but will lose all seniority in the previous job classification. Any return by an employee to the previous job classification under any circumstances set forth hereinabove, does not guarantee the employee's original assignment.

9.     Employees earning the two percent (2%) per years of service retirement discount on health insurance (hereinafter referred to as "health insurance discount") prior to reallocation to the new job classification will retain his/her earned health insurance discount after reallocation, but further accruals of the health insurance discount will be based on the collective bargaining terms of the reallocated employee's new bargaining unit.

10.     Except as otherwise expressly outlined herein, nothing in this MOU modifies, alters or amends the parties' CBA's.

11.     This agreement will become effective upon execution of all parties hereto.

## [INTENTIONALLY LEFT BLANK]

**Page 3 of 4**

MEMORANDUM OF UNDERSTANDING BY AND BETWEEN THE BROWARD SHERIFF'S OFFICE, BROWARD COUNTY PROFESSIONAL FIRE FIGHTERS AND PARAMEDICS, INTERNATIONAL UNION OF POLICE ASSOCIATIONS LOCAL 6020 LAW ENFORCEMENT DEPUTUES/SERGEANTS BARGAINING UNIT, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 4321, AND THE FEDERATION OF PUBLIC EMPLOYEES

**THE BROWARD SHERIFF'S OFFICE**

By: _____     Date: 4·26·18
      SHERIFF SCOTT J ISRAEL

Approved as to form and legal sufficiency
subject to the execution by the parties:

By: _____     Date: 042618
      Ronald M. Gunzburger, General Counsel/Exec. Director
      Office of the General Counsel

**INTERNATIONAL UNION OF POLICE ASSOCIATIONS. LOCAL 6020, AFL-CIO**

Approved as to form and legal sufficiency:

Signed: _____          Signed: _____
         President Jeffrey Bell                        Attorney for IUPA, Local 6020

Date: 4/19/18                              Date: 4-19-18

**BROWARD COUNTY PROFESSIONAL FIRE FIGHTERS AND PARAMEDICS, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS. LOCAL 4321**

Approved as to form and legal sufficiency

Signed: _____          Signed: _____
         President Vory Fatjo                         Attorney for IAFF, Local 4321

Date: 4/25/18                              Date: 4/25/18

**FEDERATION OF PUBLIC EMPLOYEES**        Approved as to form and legal sufficiency:

Signed: _____          Signed: _____
         Sgt. Anthony Marciano, Director              Attorney for FOPE

Date: 4-4-18                               Date: 4.12.18

Page 4 of 4